Faegre & Benson LLP
3200 Wells Fargo Center
1700 Lincoln Street
Denver, Colorado 80203-4532
Telephone: (303) 607-3500
Facsimile: (303) 607-3600
Michael S. McCarthy, Admitted *Pro Hac Vice,* MMcCarthy@faegre.com
Todd P. Walker, Admitted *Pro Hac Vice* , TWalker@faegre.com
Stephen A. Wichern, Admitted *Pro Hac Vice,* SWichern@faegre.com

Broening, Oberg, Woods & Wilson, P.C.
1122 East Jefferson Street
P.O. Box 20527
Phoenix, Arizona 85036
Telephone: (602) 271-7700
Facsimile: (602) 258-7785
James Broening, #004036, jrb@bowwlaw.com
Robert T. Sullivan, #022719, rts@bowwlaw.com

Attorneys for Defendant State Farm,
Fire and Casualty Company

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| **ROSEMARY GUADIANA,** )<br><br>**Plaintiff,** )<br><br>)<br>**v.** )<br><br>**STATE FARM FIRE AND** )<br>**CASUALTY COMPANY** )<br><br>**Defendant.** )<br>_____ ) | Case No. **4:07-cv-00326-FRZ-GEE**<br><br>**DEFENDANT'S MOTION FOR**<br>**SUMMARY JUDGMENT AND**<br>**MEMORANDUM OF LAW**<br>**IN SUPPORT**<br><br>**ORAL ARGUMENT REQUESTED** |

  Defendant respectfully files this Motion for Summary Judgment and requests that the Court grant summary judgment in its favor pursuant to Federal Rule of Civil Procedure 56. This Motion is supported by the following Memorandum of Law and Defendant's Statement of Facts ("SOF") filed herewith.

# <u>TABLE OF CONTENTS</u>

<u>Page</u>

TABLE OF AUTHORITIES ..................................................................................... iii

I.      INTRODUCTION ...................................................................................... 1

II.     FACTUAL BACKGROUND ....................................................................... 3

III.    ARGUMENT .............................................................................................. 6

        A.      Legal Standard for Summary Judgment ...................................... 6

        B.      The Policy Provides Tear-Out Coverage Only for Repair, Not for
                Replacement and Excludes Tear-Out Coverage for Defective
                Materials ........................................................................................ 7

        C.      Summary Judgment Should Be Granted Because Plaintiff Cannot
                Show that It Was Necessary to Replace the Entire Piping System ............ 13

        D.      Summary Judgment Should Be Granted in Favor of State Farm on
                Plaintiff's Claim for Bad Faith/Exemplary Damages ................................. 15

        E.      Summary Judgment Should Be Granted in Favor of State Farm on
                Plaintiff's Claim for Injunctive Relief ....................................................... 17

CONCLUSION ....................................................................................................... 17

ii

1

## **TABLE OF AUTHORITIES**

2

### **CASES**

3
4
*American Family Mutual Insurance Co. v. White*, 204 Ariz. 500,
65 P.3d 449 (Ct. App. 2003)............................................................. 7

5
*ASU Students for Life v. Crow*, 2008 WL 686946 (D. Ariz. Mar. 10 2008) ......... 17

6
7
*Canal Barge Co. v. Commonwealth Edison Co.*, 2002 WL 1264002
(N.D. Ill. June 3, 2006)...................................................................... 10

8
*Cigainero v. Shelton*, 1997 WL 80617 (Tex. App. Feb. 26, 1997)........................ 9

9
10
*Finegan v. Autotransportes Tufesa S.A. de C.V.*, 2009 WL 331349 (D.
Ariz. Feb. 11, 2009) ......................................................................... 6

11
12
*Henson v. Air National Guard Air Force Reserve Command Test Center*,
2007 WL 2903993 (D. Ariz. Sept. 28, 2007).................................... 6

13
14
*Hudnell v. Allstate Insurance Co.*, 190 Ariz. 52, 945 P.2d 363
(Ct. App. 1997) ................................................................................ 7

15
*Keggi v. Northbrook Property & Casualty Co.*, 199 Ariz. 43, 13 P.3d 785
16
(Ct. App. 2000) ........................................................................... 7, 13

17
*Lack v. Rustick*, 2009 WL 1028178 (D. Ariz. Apr. 16, 2009) ............................... 6

18
*Martinez v. Goddard*, 521 F. Supp. 2d 1002 (D. Ariz. 2007)............................... 7

19
20
*McMahon v. State Farm Fire and Casualty Co.*, 2007 WL 1377670
(E.D. Pa. May 8, 2007)...................................................................13, 14

21
22
*Noble v. National American Life Insurance Co.*, 128 Ariz. 188,
624 P.2d 866 (Ariz. 1981) ............................................................. 15

23
*Pacific Indemnity Co. v. Kohlhase*, 9 Ariz. App. 595, 455 P.2d 277
24
(1969) ........................................................................................... 6, 13

25
*Rawlings v. Apodaca*, 151 Ariz. 149, 726 P.2d 565 (Ariz. 1986)....................... 16

26
*Regal Homes Inc. v. CAN Insurance Co.*, 217 Ariz. 159, 171 P.3d 610
(Ct. App. 2007) ...........................................................................15, 16

27
28

iii

*Schiernbeck v. Davis*, 143 F.3d 434 (8th Cir. 1998) ............................................ 10

*Sparks v. Republic National Life Insurance Co.*, 132 Ariz. 529,
     647 P.2d 1127 (Ariz. 1982) ....................................................... 7, 11

*Sweet v. Grange Mutual Casualty Co.*, 364 N.E.2d 38 (Ohio Ct. App.
     1975).............................................................................. 9, 10

*Thompson v. Better Bilt Aluminum Products Co.*, 171 Ariz. 550,
     832 P.2d 203 (1992)................................................................ 17

*Zilisch v. State Farm Mutual Insurance Co.*, 196 Ariz. 234, 995 P.2d 276
     (Ariz. 2000) ...................................................................... 16

## STATUTES AND RULES

Federal Rules of Civil Procedure 56(c) .................................................... 6

## MISCELLANEOUS

*Black's Law Dictionary* (3d. ed.)........................................................... 9

*Merriam Webster's Collegiate Dictionary* (11th ed. 2004) ................................ 2, 8

*Oxford English Dictionary* ............................................................... 10

**MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

Defendant State Farm Fire and Casualty Company ("State Farm") respectfully submits this memorandum in support of its motion for summary judgment.

## I.  INTRODUCTION

Under the facts and law, Plaintiff cannot demonstrate any genuine issue of material fact as to her alleged entitlement to further payment under the tear-out provision of her State Farm homeowners policy.

Under Plaintiff's policy, in the event of covered water damage from a plumbing leak, there is coverage for the cost of tearing out and replacing any part of the building necessary to "repair the system."  (SOF ¶ 6.)  Plaintiff claims that under this coverage she is entitled to tear-out costs to repipe her entire house because the polybutylene (PB) pipe used in the construction of her house is defective.  State Farm submits that (i) Plaintiff's claim disregards the plain meaning of the word "repair" as used in her policy's tear-out provision, (ii) such costs are expressly excluded "under any coverage" under the policy's exclusion for defective construction materials, and (iii) Plaintiff cannot show that replacement of all the pipes in her house was necessary.

First, in its decision denying State Farm's motion to dismiss, [1] the Court's analysis of the policy language "necessary to repair the system" focused on the meaning of the word "system," but did not consider the meaning of the word "repair."  The tear-out coverage by its plain terms extends only to *repair* of a system, not replacement.  As courts have held, "repair" and "replace" are not synonymous.  In fact, State Farm's policy

---

[1] On January 14, 2008, Magistrate Judge Edmonds recommended denial of State Farm's motion in a Report and Recommendation adopted by this Court on August 29, 2008.

carefully distinguishes between the use of the terms "repair" and "replace" and of the phrase "repair or replace."  The policy's use of "repair" in the tear-out provision (rather than "repair or replace") unambiguously limits the scope of the tear-out coverage.

The pertinent dictionary definition of "repair" is "to restore by *replacing a part* or putting together what is torn or broken."  *Merriam Webster's Collegiate Dictionary* 1055 (11th ed. 2004) (emphasis added).  Thus, the word "repair" refers to fixing an existing object, rather than replacing the object entirely with a new one.  While repairing a system could include replacing a broken *part* of the system, a repair does not encompass replacing the entire system, as Plaintiff claims here.

Second, Plaintiff's policy expressly excludes "under any coverage" "defect, weakness, inadequacy, fault or unsoundness in . . . materials used in construction." (SOF ¶ 8.)  This exclusion "under any coverage" by its plain terms applies with respect to the policy's tear-out coverage, barring Plaintiff's claim here for tear-out coverage to allow replacement of allegedly defective and inadequate PB pipes.

Third, if Plaintiff's policy could be read to cover tear-out costs for replacing the entire system, Plaintiff can recover such costs, as this Court held, only if she can show "it was necessary to replace all the pipes."  Report and Recommendation at 4.  Discovery has now made clear that Plaintiff cannot make that showing.  Plaintiff relies upon evidence that PB piping deteriorates more quickly than other piping and is now considered undesirable for use in domestic plumbing.  However, Plaintiff can provide no evidence showing an immediate need to repipe her entire home.  She has provided no specific evidence as to the condition of the pipes in her home, the degree, if any, to which the

2

pipes had deteriorated, or how long the pipes would have lasted if she had not had them replaced.   Indeed, the evidence establishes that Plaintiff's nephew initially repaired her leaky pipe.   Plaintiff continued to use her plumbing system without any further leaks for over four weeks.   Plaintiff then elected to have her entire piping system, which was not leaking, replaced by the Spartan Plumbing Company.   Thus, Plaintiff cannot establish a genuine issue of material fact as to coverage sufficient to defeat summary judgment.

Summary judgment should also be granted on Plaintiff's claim for bad faith and exemplary damages.   An insurer is liable for bad faith only if it denied benefits with no reasonable basis or otherwise knowingly acted unreasonably in handling a policyholder's claim.   Here, State Farm acted upon a reasonable interpretation of the policy language as covering only tear-out costs necessary to repair the leaking pipe.   Even if that interpretation is adjudged to be incorrect, it cannot serve as the basis for a finding of bad faith, much less for a finding that State Farm acted with the "evil mind" necessary to support exemplary damages.   Plaintiff can show no other conduct by State Farm in the handling of her claim that could warrant bad faith or punitive damages under Arizona law.

For these reasons and the reasons set forth below, summary judgment should be granted in favor of State Farm on all of Plaintiff's claims.

## II.   FACTUAL BACKGROUND

On September 9, 2004, Plaintiff's house sustained water damage from a leak in a pipe in the wall of Plaintiff's guest bedroom.   (SOF ¶ 1.)   It is undisputed that Plaintiff was paid $6,057 by State Farm for the water damage to her home, including repair of the wall where the leaking pipe was located (which was also where access was needed to

3

repair the leaking pipe).  (SOF ¶ 2.)  Plaintiff claims, however, that her entire pipe system was defective because it was made out of PB pipe and that the entire system, not just the leaking pipe, needed to be replaced.  First Am. Cmplt. ¶¶ 8-12, 14.

There is no dispute that Plaintiff's policy does not provide coverage for either the repair or replacement of the leaky pipe itself.  What the policy does cover is water damage to the insured's house and property that is caused by a sudden leak in a pipe.  In addition to paying for such covered water damage, the policy also provides coverage for the cost of tearing out and replacing any part of the house that is necessary to get access to the leak so that repairs can be performed.  The relevant policy language is contained in the policy exclusion for damage from continuous or repeated seepage or leakage of water or steam from the plumbing system (or other household systems and appliances).  The provision states:

> 1.  We do not insure for any loss . . . which consists of, or is directly and immediately caused by, one or more the perils listed in items a. through n. below, regardless of whether the loss occurs suddenly or gradually, involves isolated or widespread damage, arises from natural or external forces, or occurs as a result of any combination of these:
>
> . . . .
>
> f.   continuous or repeated seepage or leakage of water or steam from a:
>
> > (1) heating, air conditioning or automatic fire protective sprinkler system;
> >
> > (2) household appliance; or
> >
> > (3) plumbing system, including from, within or around any shower stall, shower bath, tub installation, or other plumbing fixture, including their walls, ceilings or floors;
>
> which occurs over a period of time.  *If loss to covered property is caused by water or steam not otherwise excluded, we will cover the cost of tearing out and replacing any part of the building necessary to repair the system or appliance.*  We do not cover loss to the system or appliance from which the

4

water or steam escaped . . .

(SOF ¶ 6.)   The policy excludes loss consisting of, or caused by, "wear, tear, . . . deterioration, inherent vice, latent defect or mechanical breakdown."  (SOF ¶ 7.)  The policy also provides that State Farm "do[es] not insure *under any coverage*" for "any loss" consisting of "defect, weakness, inadequacy, fault or unsoundness in . . . materials used in construction or repair."  (SOF ¶ 8) (emphasis added).

Ms. Guadiana's home was built in 1986, and she has owned it since 2001.  (SOF ¶ 10.)  Ms. Guadiana's September 9, 2004 plumbing leak is the only plumbing leak she has had since she has owned her home.  (SOF ¶ 11.)  Ms. Guadiana testified that the leaking pipe had a hole the size of the head of a screw.  (SOF ¶ 12.)  Her nephew repaired the leak.  (SOF ¶ 13.)  The repaired pipe, and the rest of her plumbing system, all functioned without any further leaks until Plaintiff elected, more than four weeks later, to have Spartan Plumbing replace all the pipes in her home.  (SOF ¶ 13.)  Michael McInnis of Spartan Plumbing and Plaintiff's expert, Denny R. Henderson, admit that that they do not know how long a repair of a PB pipe will last in any given instance, and neither has specific knowledge regarding Ms. Guadiana's leak.  (SOF ¶ 16.)

Mr. Henderson acknowledged that some contractors disagree that all PB pipe must be replaced and will repair PB leaks rather than replace the entire system.  (SOF ¶ 17.)  Indeed, Mr. Henderson himself has repaired PB pipes in the houses of his friends.  (SOF ¶ 18.)  Mr. McInnis testified that in his experience 30-40% of homeowners choose to repair PB pipe, rather than repipe (SOF ¶ 15), and that his company is willing to repair PB pipe if the homeowner chooses.  (SOF ¶ 15.)  Mr. McInnis testified that the initial

repair of Plaintiff's pipe was done in a "legitimate" and "compliant" way.  (SOF ¶ 14.)  Plaintiff's expert Henderson acknowledged that PB pipes may leak for a variety of reasons and in a variety of ways that may affect repair of the pipes.  (SOF ¶ 19.)  State Farm's expert Mark Passamaneck has opined that "[i]n many cases, PB pipe can be repaired in lieu of replacement" and a failure in a PB pipe may be localized, rather than systemic.  (SOF ¶ 20; *see also* SOF ¶ 22.)  It is undisputed that standard methods exist for repairing PB pipes and that most hardware stores carry PB pipe repair kits.  (SOF ¶ 21.)

## III.   ARGUMENT

### A.   Legal Standard for Summary Judgment

Under Federal Rule of Civil Procedure 56, "'[s]ummary judgment is appropriate where 'there is no genuine issue as to any material fact.'"  *Finegan v. Autotransportes Tufesa S.A. de C.V.*, 2009 WL 331349, at *1 (D. Ariz. Feb. 11, 2009) (quoting Fed. R. Civ. P. 56(c)).  On issues on which the non-moving party bears the burden of proof, the "moving party merely needs to point out to the Court the absence of evidence supporting its opponent's claim; it does not need to disprove its opponent's claim."  *Henson v. Air Nat'l Guard Air Force Reserve Command Test Ctr.*, 2007 WL 2903993, at *4 (D. Ariz. Sept. 28, 2007). Under Arizona law, Plaintiff bears the burden of proving coverage under the insuring clause, here the provision for tear-out coverage.  *See Pac. Indem. Co. v. Kohlhase*, 9 Ariz. App. 595, 597, 455 P.2d 277, 279 (1969).  The Court must "'view the evidence presented through the prism of the evidentiary standard of proof that would pertain at a trial on the merits.'"  *Lack v. Rustick*, 2009 WL 1028178, at *4 (D. Ariz. Apr. 16, 2009) (citation omitted). A "'mere scintilla of evidence' in support of the nonmoving

party's claim is insufficient to defeat summary judgment." *Martinez v. Goddard*, 521 F. Supp. 2d 1002, 1004 (D. Ariz. 2007) (citation omitted).

**B.     The Policy Provides Tear-Out Coverage Only for Repair, Not for Replacement and Excludes Tear-Out Coverage for Defective Materials**

Under Arizona law, the "'interpretation of an insurance contract . . . is a question of law.'" *Hudnell v. Allstate Ins. Co.*, 190 Ariz. 52, 53, 945 P.2d 363, 364 (Ct. App. 1997) (citation omitted).   Insurance policies must be construed "'according to their plain and ordinary meaning,'" *American Family Mut. Ins. Co. v. White*, 204 Ariz. 500, 503, 65 P.3d 449, 452-53 (Ct. App. 2003) (citation omitted), and a policy "'must be read as a whole in order to give a reasonable and harmonious meaning and effect to all its provisions.'" *Sparks v. Republic Nat'l  Life Ins. Co.*, 132 Ariz. 529, 536, 647 P.2d 1127, 1134 (Ariz. 1982).   If a clause in an insurance policy "may be susceptible to different constructions, rather than simply finding ambiguity and resorting to the *contra proferentem* doctrine," Arizona courts "first attempt to discern the meaning of the clause 'by examining the purpose of the [provision] in question, the public policy considerations involved and the transaction as a whole.'" *Keggi v. Northbrook Prop. & Cas. Ins. Co.*, 199 Ariz. 43, 46, 13 P.3d 785, 788 (Ct. App. 2000) (citation omitted).

On State Farm's motion to dismiss, the Magistrate Judge interpreted the word "system" in the tear-out provision so as to provide tear-out coverage for replacement of the entire pipe system if necessary.   *See* Report and Recommendation at 4-5.   The Magistrate Judge reasoned that the word "system" in State Farm's policy was not "used so narrowly in the tear-out provision that it must apply only to the pipe that burst and caused the covered loss" and that State Farm could be obligated under that provision to pay the

7

tear-out costs necessary to replace all the pipes, even those, not leaking," if necessary to repair the "system." *Id*. at 4.  Having found that this was enough to defeat a motion to dismiss, and to allow the case to proceed to discovery, neither the Magistrate Judge nor this Court had occasion to focus on the word "repair."  Now, with benefit of discovery, including the Plaintiff's sworn testimony, State Farm submits that, as a matter of law, the policy did not provide "tear-out coverage" for the repiping of Plaintiff's entire home.

The policy provides:  "If loss to covered property is caused by water or steam not otherwise excluded, we will cover the cost of tearing out and replacing any part of the building necessary to *repair the system* or appliance" that leaked.  (SOF ¶ 6) (emphasis added).   The word "repair" does not mean preventative maintenance, such as the cautionary replacement of parts that have not yet failed and are not broken.  Similarly, to "repair the system" does not mean to replace the entire system rather than fixing or restoring the part of the system that actually failed.  In addition, the word "repair" refers to fixing an existing object, rather than substituting a new object for the existing one.

The pertinent dictionary definition of "repair" is "to restore by *replacing a part* or putting together what is torn or broken." *Merriam Webster's Collegiate Dictionary* 1055 (11th ed. 2004) (emphasis added).  Thus, although repairing a system could include replacing a broken *component part* of the system, repair does not mean replacing the entire existing system with a new one.  These differences between "repair" and "replace" are not some lawyer-created distinction.   Everyone knows that "repairing" a roof, refrigerator, or computer means to fix the existing one so that it will function satisfactorily.  The repair may involve replacing some shingles, gaskets, or other parts but

8

everyone understands that to be separate and distinct from "replacing" with a new roof, refrigerator or computer.  Interpreting "repair" as used in State Farm's policy to mean fixing the leak that caused the covered water damage does not result in the word "system" having an artificially restricted meaning.  Report and Recommendation at 4.  Rather, the particular pipe or fitting that burst is the broken part of the system which must be replaced or mended in order to *repair* the system.

The reported decisions strongly support this interpretation of the words "repair the system," by distinguishing between "repair" and "replace" in a variety of contexts.  For instance, in *Cigainero v. Shelton*, 1997 WL 80617 (Tex. App. Feb. 26, 1997), the court, interpreting a contract that provided for reimbursement for repairs to certain items of machinery, stated:

> [T]he contract provision for offset covered "repairs."  It did not include the term "replacement."  The term repair in its ordinary sense means "to mend, remedy, restore, renovate; to restore to a sound, good, or complete state after decay . . . ."  The terms "repair" and "replacement" are not synonymous.  The record reveals that many of the expenses were for the *replacement* of items as opposed to *repair*.

*Id.* at *4 (ellipsis in original; emphasis added; citation omitted).

Similarly, an Ohio appellate court quoted the following sentences from the definition of "repair" in the third edition of *Black's Law Dictionary*:

> "The word 'repair' contemplates an existing structure or thing which has become imperfect, and means to supply in the original existing structure that which is lost or destroyed . . . .  'Repair' means to restore to former condition; not to change either the form or material of a building."

*Sweet v. Grange Mut. Cas. Co.*, 364 N.E.2d 38, 43 (Ohio Ct. App. 1975).  Based upon this definition of "repair," the court rejected the defendant's argument that its offer to replace the rear half of its insured's damaged car by "clipping" on the rear half of another

9

car constituted a "repair" under the plaintiff's insurance policy.  *See id.* at 39, 43.

Under the definition cited in *Sweet*, replacement of the entire existing system of pipes replaces "the original existing structure," changing its "form" and "material," and is not a repair. *Id.* at 43; *see also Schiernbeck v. Davis*, 143 F.3d 434, 440 (8th Cir. 1998) (under dictionary definition, "the term 'repair' does not encompass replacing a missing smoke detector"); *Canal Barge Co. v. Commonwealth Edison Co.*, 2002 WL 1264002, at *4 (N.D. Ill. June 3, 2002) (noting that "dictionaries commonly define the term 'repair' to include the replacement or renewal of damaged, worn, or defective *parts*"; citing *Oxford English Dictionary* (defining "repair" as the "[r]estoration of some material thing or structure by the renewal of decayed or damaged *parts*, or by refixing what has given way; to mend")) (alteration in original; emphasis added).

The significance of the use of "repair" (and not "repair or replace") in the tear-out provision is underscored by the fact that the policy itself carefully distinguishes between repair and replacement.   Where the policy provides coverage for either repair or replacement of a "damaged part" of the property, the policy specifically uses the phrases "repair or replace" or "repair or replacement."   (SOF ¶ 23.)  Indeed, the policy uses the phrases "repair or replace" or "repair or replacement" more than 70 times.  (SOF ¶ 23.) Likewise, in other provisions, the policy uses either the single word "repair" or the single word "replace" depending on the intended meaning.  For example, one of the policy's loss settlement provisions states that State Farm "will not pay an amount exceeding the smallest of the following . . . : (1) our cost to *replace* at the time of loss; (2) the full cost of *repair* . . . ."  (SOF ¶ 23.)  In light of the policy's consistent usage of the terms "repair"

10

and "replace" as having different meanings, the use in the tear-out provision of the word "repair" alone, rather than the phrase "repair or replace," negates any obligation on the part of State Farm to pay tear-out costs to *replace* an entire system, including parts that do not leak, but are merely made of unsuitable materials.

The policy read as a whole also requires limiting tear-out coverage in this case to repair of the pipe that burst. *See Sparks*, 132 Ariz. at 536, 647 P.2d at 1134 (a "'policy must be read as a whole in order to give a reasonable and harmonious meaning and effect to all its provisions'") (citation omitted). The coverage for tearing out and replacing building parts to allow repair of the plumbing system applies only when covered damage from non-excluded water or steam has occurred (from the sudden bursting of a pipe, for example). Thus, the tear-out coverage is specifically linked to covered water damage and is part of the coverage for such a loss. In this context, the common sense reading of the coverage provided is not that there is wholesale coverage for tearing out to allow an entire repiping, but that there is coverage for tearing out to the extent it is necessary to access and make repairs to the section of pipe that burst.

Other policy provisions read together with the tear-out provision also require the conclusion that the tear-out provision does not cover tear-out for pipe that is not leaking, but is simply deteriorated or made of defective materials. Plaintiff's homeowners policy excludes "continuous or repeated seepage or leakage" from the plumbing system and does not provide tear-out coverage for such seepage or leakage. (SOF ¶ 4.) The policy also expressly states that State Farm "do[es] not insure for any loss . . . which consists of, or is directly and immediately caused by . . . wear and tear, marring, scratching,

*deterioration*, inherent vice, latent defect or mechanical breakdown."   (SOF ¶ 7) (emphasis added).   Under Plaintiff's policy interpretation, a sudden leak in the kitchen would improperly render wear and tear to a pipe in an upstairs bathroom eligible for tear-out coverage.

Even more significantly, the policy expressly excludes "under any coverage" any loss that consists of a "defect, weakness, inadequacy, fault or unsoundness . . . in materials used in construction or repair."  (SOF ¶ 8.).  Reading of the tear-out provision to encompass tear-out to replace an entire pipe system that is made of faulty or unsound materials improperly negates this policy exclusion, which is directly applicable to Plaintiff's claim that her entire piping system needed replacement because PB pipe is "not suitable material for water pipes."   First Am. Complt. ¶¶ 10-12.   Plaintiff's claim is clearly one for the "materials used in construction or repair," which is not insured "under *any* coverage" (SOF ¶ 8) (emphasis added) – including tear-out coverage.

The expansion of tear-out coverage to cover tearing out wall or floors to permit access to pipe that has not failed and does not leak but is merely worn out, deteriorating, or defective for use in home plumbing also is unreasonable in light of public policy and the purposes of homeowners insurance.  State Farm's homeowners policy (like other homeowners insurance) is intended to  protect against accidental loss.  (SOF ¶ 3.)  In the event of a covered accidental loss, the State Farm policy pays the cost of repairing or replacing only "the damaged part" of the property.   (SOF ¶ 9.)   The purpose of homeowners insurance is not to provide a product guaranty for the materials used in construction.  It is also not intended to cover normal maintenance, repair or replacement

of parts of the house (*e.g.*, a roof).  The purpose of exclusions for deterioration, wear and tear, and inadequate construction materials, such as Plaintiff claims here, is to restrict coverage to accidental fortuitous losses in accordance with the purpose of the insurance provided.  *Cf. Keggi*, 199 Ariz. at 48-50, 13 P.3d at 790-92 (purpose of insurance policy provision and public policy are relevant to  interpretation of policy).   As one court explained:

> A broken pipe is not an unusual or unexpected loss for a homeowner. Plumbing does not last indefinitely, and pipes need to be replaced when they wear out.  Plaintiffs' repair may have been costly because of the method of construction used in building their house, but a repair like this one is not something that this policy was intended to insure against.  The policy covers accidental direct physical losses, not the costs of normal repairs.

*McMahon v. State Farm Fire and Cas. Co.*, 2007 WL 1377670, at *4 (E.D. Pa. May 8, 2007).  Here, the pipes in Plaintiff's house functioned from 1986, when the house was built, to 2004, apparently with no unusual problems.   In 2004, water from Plaintiff's broken pipe allegedly caused some covered damage to the property, thereby entitling her to tear-out coverage.  To expand that tear-out coverage to encompass tear-out costs for the entire plumbing system is at odds not only with the policy language, but also with the purpose of home insurance.

### C.    Summary Judgment Should Be Granted Because Plaintiff Cannot Show that It Was Necessary to Replace the Entire Piping System

Assuming that the policy language can be read to cover replacement of Plaintiff's pipe system (rather than repair as stated in the policy), it would be Plaintiff's burden to show that her loss is within the policy coverage.  *See Kohlhase*, 455 P.2d at 279.  Thus, as this Court held, Plaintiff is required to provide evidence that it was necessary to

replace all the pipes in order to repair the system.  Report and Recommendation at 4.

It is undisputed that Plaintiff's nephew (who has since obtained a plumbing license) repaired the leak shortly after it was discovered.  (SOF ¶ 13.)  It is undisputed that the repaired pipe did not leak again.  It is also undisputed that Plaintiff did not experience leaks elsewhere in the system.  Rather, more than four weeks after her nephew performed the satisfactory repairs, Plaintiff decided that she wanted her entire home repiped.  (SOF ¶ 13.)  Given that the plumbing system was then nearly 20 years old, State Farm does not question the wisdom of the Plaintiff's decision any more than State Farm would challenge the insured's decision to replace the 20-year old refrigerator that had broken and been repaired or to replace a 20-year old roof that had leaked and been repaired.  The point is State Farm does not provide home maintenance coverage.  *See McMahon*, 2007 WL 1377670, at *4.  Plaintiff is, quite simply, seeking home maintenance coverage, not water damage repair coverage.

Plaintiff has provided no evidence regarding the specific condition of the different pipes in her home.  Nor has she provided evidence that all of the pipe she had replaced was actually made out of PB.  Moreover, Plaintiff's expert admitted that some contractors will repair PB leaks rather than replace the entire plumbing system and that he does not know how long a PB pipe repair will last.  (SOF ¶¶ 16-17.)  Plaintiff's expert also has acknowledged that a leak in PB pipe can have a variety of causes, including not only deterioration, but stress caused by improper installation and many other causes. (SOF ¶ 19.)  It is, therefore, totally speculative whether Plaintiff would have experienced another leak and, even if she had, whether repair of the resulting property damage would

14

have required complete repiping of the home, and State Farm is entitled to summary judgment.

**D.    Summary Judgment Should Be Granted in Favor of State Farm on Plaintiff's Claim for Bad Faith/Exemplary Damages**

Summary judgment should also be granted as to Plaintiff's claim for bad faith and punitive damages.  Plaintiff alleges that State Farm's refusal to pay for tear-out costs for repiping her entire house constituted bad faith and that she is therefore entitled to exemplary damages.  *See* First Am. Complt. ¶ 40.  Because it was at the very least fairly debatable whether Plaintiff was entitled under her policy to further tear-out costs, State Farm's denial of further tear-out costs is not a basis for bad faith or punitive damages.

"'To show a claim for bad faith, a plaintiff must show the absence of a reasonable basis for denying benefits of the policy and the defendant's knowledge or reckless disregard of the lack of a reasonable basis for denying the claim.'"  *Noble v. Nat'l American Life Ins. Co.*, 128 Ariz. 188, 190, 624 P.2d 866, 868 (Ariz. 1981) (citation omitted).  Under this standard, an insurance company may "challenge claims which are fairly debatable."  *Id.*   The fact that a denial of benefits may ultimately be determined to be incorrect does not mean that the insurer "knowingly acted unreasonably" in denying the claim, particularly in the absence of any relevant court decision on the issue.  *See Regal Homes Inc.  v. CNA Ins.*, 217 Ariz. 159, 170-71, 171 P.3d 610, 621-22 (Ct. App. 2007) (affirming summary judgment in favor of insurer on bad faith claim).   When summary judgment is granted in favor of an insurer on a claim of bad faith, summary judgment is also warranted on punitive damages.  *See id.* at 171, 171 P.3d at 622.

Here, State Farm maintains that its denial of tear-out costs for the replacement of

15

the entire pipe system was based upon a correct interpretation of the policy language.  *See* Point I *supra*.  At the very least, however, even if State Farm's interpretation is adjudged to be incorrect, it is a reasonable interpretation and not contrary to judicial precedent.  *Cf. Regal Homes*, 217 Ariz. at 170-71, 171 P.3d at 621-22 (affirming summary judgment on claim for bad faith and punitive damages; noting that there was no court case from Arizona or elsewhere imposing further investigative obligation on insurer).  Furthermore, there is absolutely no evidence that, even though there was a fairly debatable basis for denying the claim, State Farm "acted unreasonably" in the "investigation, evaluation and processing" of Plaintiff's claim and "either knew or was conscious of the fact that its conduct was unreasonable." *Zilisch v. State Farm Mut. Auto. Ins. Co.*, 196 Ariz. 234, 238, 995 P.2d 276, 280 (Ariz. 2000).  Thus, Plaintiff's bad faith claim fails as a matter of law.

Moreover, a finding of bad faith is not sufficient to establish a claim for exemplary damages.  *See Rawlings v. Apodaca*, 151 Ariz. 149, 161-62, 726 P.2d 565, 577-78 (Ariz. 1986).  *Rawlings* rejected the argument that "punitive damages are automatically recoverable in every case in which the plaintiff proves that the tort [of bad faith] was committed." *Id.* at 161, 726 P.2d at 577.  Rather, under Arizona law, in bad faith cases, as with other torts, "punitive damages are only recoverable under special circumstances." *Id.*  Thus, to defeat summary judgment on her claim for punitive damages, "'[t]here must be circumstances of aggravation or outrage, such as spite or "malice," or a fraudulent or evil motive on the part of the defendant, or such a *conscious and deliberate disregard* of the interests of others that the conduct may be called wilful or wanton,'" *id.* (citation omitted), and Plaintiff must establish that "a reasonable jury could find the requisite evil

16

mind by clear and convincing evidence." *Thompson v. Better Bilt Aluminum Prods. Co.*, 171 Ariz. 550, 558, 832 P.2d 203, 211 (1992).  Plaintiff cannot show any such evidence.

Accordingly, summary judgment should be granted in favor of State Farm on Plaintiff's claim for bad faith and punitive damages.

### E.   Summary Judgment Should Be Granted in Favor of State Farm on Plaintiff's Claim for Injunctive Relief

Summary judgment should also be granted as to Plaintiff's claim for injunctive relief "mandating" that (i) tear-out coverage extends to "tearing out and replacing all parts of the building necessary to replace the entire PB piping system" and (ii) in the future State Farm will honor such claims.  First Am. Complt. ¶ 31. This claim fails for all the reasons that Plaintiff's contract claim fails.  *See* Points III.B, C *supra*. Moreover, because Plaintiff no longer has PB pipe or State Farm homeowners insurance (SOF ¶¶ 24-25), she has no standing to pursue future injunctive relief against State Farm.  *See ASU Students for Life v. Crow*, 2008 WL 686946, at *8 (D. Ariz. Mar. 10, 2008).

### CONCLUSION

Plaintiff suffered property damage because of a leaky pipe.  State Farm paid her for that property damage.  State Farm also paid tear-out costs necessary to repair the leak. The repairs worked.  Plaintiff experienced no further leaks.  Nonetheless, as a precautionary measure, Plaintiff decided to replace her entire plumbing system.  State Farm's policy does not provide home maintenance coverage.  Plaintiff has received everything she is entitled to receive under the terms of the policy.  State Farm is entitled to summary judgment.

17

Respectfully submitted this 31st day of July, 2009.

s/ Michael S. McCarthy             s/ James R. Broening

Michael S. McCarthy             James R. Broening, #004036
Todd P. Walker             Robert T. Sullivan, #022719
Stephen A. Wichern             Broening, Oberg, Woods & Wilson, P.C.
Admitted Pro Hac Vice             1122 East Jefferson Street
Faegre & Benson LLP             P.O. Box 20527
3200 Wells Fargo Center             Phoenix, Arizona 85036
1700 Lincoln Street
Denver, Colorado 80203-4532

ATTORNEYS FOR DEFENDANT STATE FARM FIRE AND CASUALTY COMPANY

18

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on 31st day of July, 2009, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

Cory S. Fein, Esq.
Cynthia B. Chapman, Esq.
Michael A. Caddell, Esq.
Richard D. Daly, Esq.
CADDELL & CHAPMAN
1331 Lamar Street, Suite 1070
Houston, TX  77010

Joseph W. Watkins
JOSEPH W. WATKINS, P.C.
6303 E. Tanque Verde, Suite 210
Phoenix, AZ  85715-3859

A copy of the foregoing document, with a copy of the Notice of Electronic filing, was **mailed** to the Honorable Frank R. Zapata and the Honorable Glenda E. Edmonds on this same date at the following address:

HONORABLE FRANK R. ZAPATA
District Court Judge
United States District Court
Evo A. DeConcini U.S. Courthouse
405 West Congress Street, Suite 5160
Tucson, AZ  85701-5050

HONORABLE GLENDA E. EDMONDS
Magistrate Judge
United States District Court
Evo A. DeConcini U.S. Courthouse
405 West Congress Street, Suite 3170
Tucson, AZ  85701-5032

/s/ Deborah Robertson

19