Michael A. Caddell (pro hac vice)
Cynthia B. Chapman (pro hac vice)
Cory S. Fein (pro hac vice)
**CADDELL & CHAPMAN**
1331 Lamar, Suite 1070
Houston, TX 77010-3027
(713) 751-0400
(713) 751-0906 FAX
csf@caddellchapman.com

(Additional Counsel on Signature page)

Attorney for Plaintiff Rosemary Guadiana

## UNITED STATES DISTRICT COURT
## DISTRICT OF ARIZONA

| | |
|---|---|
| ROSEMARY GUADIANA, | No. CIV 07-326-TUC-FRZ (GEE) |
| Plaintiff, | |
| v. | **PLAINTIFF'S REPLY TO DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION FOR CLASS CERTIFICATION** |
| STATE FARM FIRE AND CASUALTY CO. | |
| Defendant. | |
| | **JURY TRIAL DEMANDED** |

1

**TABLE OF CONTENTS**

2

3   I.    INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

4   II.   ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

5

6         A.    Expansion of Class Definition . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

7         B.    Plaintiff's Class Is Administratively Feasible and Ascertainable . . . . .4

8         C.    Individual Issues do not Predominate over Common Issues . . . . . . 7

9
                1.    Whether an Insured Had Pb Pipe Is Not an Issue in
10                    the Case . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

11
                2.    Whether a Particular Plumbing System Could be Repaired
12                    Without Replacing the PB Pipe is Not an Individual Issue   . . 8

13        D.    The Need to Determine Damages on a Case-by-Case Basis is
14              No Hurdle to Class Certification . . . . . . . . . . . . . . . . . . . . . . . . . . 10

15        E.    Any Potential Differences in State Law Do Not Prevent
16              Class Certification in Breach of Form Contract Cases . . . . . . . . . . 12

17              1.    Courts Routinely Certify Classes in Cases Involving Breach
                      Of a Form Contract Without Choice of Law Analysis . . . . . . 12
18

19              2.    State Farm Posits No State Law "Variances" That
                      Affect this Case  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14
20

21              3.    Varying Statutes of Limitations or Accrual Rules
                      Do not Defeat Class Certification . . . . . . . . . . . . . . . . . . . . 15
22

23              4.    Issues Involving Offset Do Not Defeat Class Certification  . . 17

24              5.    Variance in Law Regarding Bad Faith and Punitive
                      Damages Does not Defeat Class Certification . . . . . . . . . . . 17
25

26        F.    Class Action is Superior to Other Available Methods
                for Fair and Efficient Adjudication of the Controversy and
27              the Class Action is Manageable. . . . . . . . . . . . . . . . . . . . . . . . . . . 18

28

1.   The Trial Plan is Simple . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

G.   Certification of Injunctive Class is Appropriate . . . . . . . . . . . . . . . 19

1.   Explanation is Necessary to Permit Class Members
     to Understand Coverage Provided by Tear-Out Provision . . 19

2.   Cohesiveness . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

3.   Standing to Assert Injunctive Class Claim . . . . . . . . . . . . . 22

H.   Numerosity . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

I.   Plaintiff is an Adequate Class Representative . . . . . . . . . . . . . . . . 25

1.   Abandonment of Claims for Punitive Damages . . . . . . . . . . 25

2.   Plaintiff's Relationship with Class Counsel Does Not
     Impact Her Ability to Adequately Represent Class . . . . . . . . 26

1

# TABLE OF AUTHORITIES

2

**Cases**

3

*Adashunas v. Negley*,
    626 F.2d 600, 603-04 (7th Cir. 1980) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Apple Computer, Inc. v. Superior Court*,
    126 Cal.App.4th 1253 (Cal. Ct. App. 2005) . . . . . . . . . . . . . . . . . . . . . 28, 29

*Bibo v. Fed. Express, Inc.*,
    No. C 07-2505 TEH, 2009 WL 1068880, at *10
    (N.D. Cal. April 21, 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Blackie v. Barrack*,
    524 F.2d 891, 905 (9th Cir. 1975) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Brewer v. Salyer*,
    No. 06-1324, 2009 WL 2019923 at *3-5 (E.D. Cal. July 8, 2009) . . . . . . . 3

*Burgess v. Farmers Insurance Co.*,
    151 P.3d 92, 94 (Okla. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Castano v. Am. Tobacco Co.*,
    84 F.3d 734 (5th Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Cent. States Se. & Sw. Areas Health & Welfare Fund v.*
*Merck-Medco Managed Care, L.L.C.*,
    433 F.3d 181, 199 (2d Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

*Chamberlan v. Ford Motor Co.*,
    402 F.3d 952, 961 n.4 (9th Cir. 2005) (per curiam) . . . . . . . . . . . . . . . . . 18

*Cleaver v. Wilcox*,
    499 F.2d 940, 942 (9th Cir. 1974) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

*Cox v. Shell Oil Co.*,
    No. A. No. 18844, 1995 WL 775363, at *1
    (Tenn. Ct. Ch. Nov. 17, 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Crosby v. Soc. Sec. Admin.*,
    796 F.2d 576 at 579-80 (1st Cir. 1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Darlow v. Farmers Insurance Exchange*,
    822 P.2d 820, 828 (Wyo. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

*Dumas v. Albers Med., Inc.*,
    No. 03-0640-CV-W-GAF, 2005 WL 2172030 at *6
    (W.D. Mo. Sept. 7, 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Dupler v. Costco Wholesale Corp.*,
    249 F.R.D. 29, 37-38 (E.D.N.Y. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*E. Maine Baptist Church v. Union Planters Bank, N.A.*,
    244 F.R.D. 538, 548-49 (E.D. Mo. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Endo v. Albertine*,
    No. 88 C 1815, 1995 WL 170030, at *1 (N.D. Ill. April 7, 1995) . . . . . . . . 12

*Estate of Robert S. Felts v. Genworth Life Ins. Co.*,
    250 F.R.D. 512 (E.D. Wash. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Gatlin v. Tennessee Farmers Mutual Insurance Co.*,
    741 S.W.2d 324 (Tenn. 1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Hum v. Dericks,*
    162 F.R.D. 628 (D.Hawaii 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

*In re Bridgestone/Firestone, Inc.*,
    288 F.3d 1012 (7th Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*In re Cardizem CD Antitrust Litigation*,
    200 F.R.D. 326, 337 (E.D. Mich. 2001) . . . . . . . . . . . . . . . . . . . . . . . . 27, 28

*In re McDonald's French Fries Litig.*,
    ___ F.R.D. ___, No. 06 C 4467, 2009 WL 1286024, at *1
    (N.D. Ill. May 6, 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*In re Synthroid Marketing Litigation*,
    188 F.R.D. 287 (N.D.Ill. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Indianer v. Franklin Life Ins. Co.*,
    113 F.R.D. 595, 607 (S.D. Fla. 1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Jim Moore Ins. Agency, Inc. v. State Farm Mutual Auto. Ins. Co.*,
    No. 02-80381-Civ., 2003 WL 22097937,
    at *1-2 (S.D. Fla. Sept. 2, 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Kamar v. Radio Shack Corp.*,
    254 F.R.D. 387, 399 (C.D. Cal. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Klay v. Humana, Inc.*,
    382 F.3d 1241, 1262-63 (11th Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Kleiner v. First Nat'l Bank of Atlanta*,
   97 F.R.D. 683, 694 (N.D. Ga. 1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Kramer v. Scientific Control Corp.*,
   534 F.2d 1085 (3d Cir. 1976) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

*Kronjaeger v. Buckeye Union Ins. Co.*,
   490 S.E.2d 657, 674 (W. Va. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*Lozano v. AT&T Wireless Services, Inc.*,
   504 F.3d 718 (9th Cir. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Lyon v. State of Ariz.*,
   80 F.R.D. 665 (D. Ariz. 1978) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

*Martens v. Thomann*,
   273 F.3d 159, 173 n.10 (2d Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

*Martin v. AT&T Wireless Corp.*,
   No. 2:07-CV-01127-MCE-DAD, 2008 WL 2096840,
   at *1 (E.D. Cal. May 16, 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

*Mazza v. Am. Honda Motor Co.*,
   254 F.R.D. 610, 616 (C.D. Cal. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Medrazo v. Honda of North Hollywood*,
   166 Cal.App.4th 89, 95 (Cal. Ct. App. 2008) . . . . . . . . . . . . . . . . . . . . . . . 6

*Moye v. Credit Acceptance Corp.*,
   No. 990157073, 2001 WL 589101 at *4 (Conn.Super. May 15, 2001) . . . 17

*Murray v. GMAC Mortgage Corp.*,
   434 F.3d 948, 953 (7th Cir.2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

*Napier v. Laurel County, Ky.*,
   No. 6:06-368-DCR, 2008 WL 544468 at *7 (E.D. Ky. Feb. 26, 2008) . . . . 5

*O'Connor v. Boeing N. Am., Inc.*,
   184 F.R.D. 311, 319 (C.D. Cal. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Ortega v. J.B. Hunt Transp., Inc.*,
   ___ F.R.D. ___, No. 2:07-cv-08336 FMC-JCx,
   2009 WL 1851330, at *7-8 (C.D. Cal. May 18, 2009) . . . . . . . . . . . . . . . . 10

*Paster v. State Farm Mutual Auto. Ins. Co.*,
   No. 05 C 1459, 2005 WL 2453900, at *9 (N.D. Ill. Sept. 30, 2005) . . . . . . . . . 14

*Pitts v. Boody*,
        688 So.2d 832, 835 (Ala. Civ. App. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . 21

*Rodriguez v. Schriro*,
        2007 WL 4200762 (D.Ariz. Nov. 27, 2007) . . . . . . . . . . . . . . . . . . . . . . . 24

*Seiden v. Nicholson*,
        69 F.R.D. 681 (N.D. Ill. 1976) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

*Spence v. Glock Ges. m.b.h.*,
        227 F.3d 308 (5th Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Steinberg v. Nationwide Mut. Ins. Co.*,
        224 F.R.D. 67, 79 (E.D.N.Y. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Susman v. Lincoln Am. Corp.*,
        561 F.2d 86 (7th Cir. 1977) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

*Vulcan Golf, LLC v. Google Inc.*,
        254 F.R.D. 521, 530-31 (N.D. Ill. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Watson-Smith v. Spherion Pacific Workforce, LLC*,
        No. 07-05774, 2009 WL 426122 at *1-2 (N.D. Cal. Feb. 20, 2009) . . . . . . 3

*Zinser v. Accufix Research Inst., Inc.*,
        253 F.3d 1180, 1189 (9th Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . 12, 18

**Treatises**

7A Wright & Miller, Fed. Prac. & Proc. Civ. 3d §1760 . . . . . . . . . . . . . . . . . . 3

Plaintiff files her Reply to Defendant's Opposition to Plaintiff's Motion for Class Certification and states as follows:

## I.   INTRODUCTION

This Court has already ruled that the "Tear-Out" provision in State Farm's insurance policy provides more benefits (i.e., all access costs necessary to "repair the system") than State Farm believes are provided by that provision (i.e., only the costs of accessing the portion of the system that is actively leaking).  Plaintiff seeks class certification so the benefits of the Court's ruling can be extended to all State Farm insureds who are underpaid as a result of State Farm's errant interpretation of its policy.  State Farm has provided no reasoned argument that would prevent certification of Plaintiff's proposed Class.  In its Opposition, State Farm merely repackages common protests to certification that, in most instances, have been roundly rejected by courts.  In the instances where State Farm's arguments may have some superficial appeal, the facts of this case do not warrant a denial of certification on the grounds State Farm raises.  The Court should deny State Farm's Opposition, and should grant Plaintiff's Motion for Class Certification.

## II.   ARGUMENT

### A.   Expansion of Class Definition

It is not unusual for Plaintiff's counsel to fine-tune the class definition as a result of facts uncovered during discovery, which is what happened in the present case.  Plaintiff learned during discovery (in particular the deposition of State Farm's Rule 30(b)(6) designee, Debbie Smith and in the sample claim files produced) that

State Farm systematically misinformed its insureds about the Tear-Out provision. Accordingly, Plaintiff's original class definition, which was limited to insureds who made a claim for Tear-Out costs and were improperly denied, had to be expanded to include those insureds who had a valid claim for Tear-Out costs but never asserted the claim because Defendant breached its duty to explain that aspect of coverage to them.  State Farm's misinforming of its insureds about the application of the Tear-Out provision, resulted in many class members not realizing they had a claim for tear-out costs associated with repair of their plumbing systems. Accordingly, because of State Farm's systematic deception, the class definition in Plaintiff's pleadings (which require that an insured actually asserted a claim for tear-out costs) may be too narrow and a more appropriate class definition is one that focuses on the insured's entitlement to tear-out costs, without regard to whether the insured actually asserted a claim for such costs.

Plaintiff asked Defendant to agree to an amendment of the class definition on May 27, 2009 and Defendant refused, because the deadline for amending pleadings had passed.  Accordingly, Plaintiff filed her motion for class certification with the class definition she felt was most appropriate based on the facts that were uncovered during discovery.  Should the Court determine that the class definition in Plaintiff's motion for class certification is more appropriate than the definition in Plaintiff's Complaint, Plaintiff will seek leave to conform the class definition in its pleadings with the class definition approved by the Court.

State Farm's protestations of prejudice caused by this amendment in the class definition are vague and unsupportable. Plaintiff informed State Farm in a timely manner of her intent to modify the class definition on May 27, 2009, less than a month after the depositions during which these issues surfaced. (The Debbie Smith deposition was April 30, 2009). There is nothing remotely inappropriate about amending the class definition as a result of information learned during discovery and rulings by a court. *See Watson-Smith v. Spherion Pacific Workforce, LLC*, No. 07-05774, 2009 WL 426122 at *1-2 (N.D. Cal. Feb. 20, 2009) (permitting plaintiff to amend class definition to comply with Court's order regarding defects in proposed class definition); *Brewer v. Salyer*, No. 06-1324, 2009 WL 2019923 at *3-5 (E.D. Cal. July 8, 2009) (treating expansion of class definition under same standard at amending complaint and permitting the expansion under the Rule 15 standard of freely allowing amendment where justice requires after considering the factors of bad faith, undue delay, prejudice to the opposing party, and futility of amendment). Class action treatises recognize that it is permissible for class definitions to be made more precise as the case progresses. "If the court decides that the class described in the complaint does not meet a minimum standard of definiteness or is too broad, it need not dismiss the action, however. It has discretion to limit or redefine the class in an appropriate manner to bring the action within Rule 23." 7A WRIGHT & MILLER, FED. PRAC. & PROC. CIV. 3d §1760 (noting that there is a liberal judicial attitude toward defining the class and it is not essential to delimit its membership with a high

degree of precision at the class-certification stage, but is preferable to identify the class "as much as possible at an early stage in the action.")

### B.     Plaintiff's Class Is Administratively Feasible and Ascertainable

To satisfy Rule 23, a Plaintiff must first establish that a class does in fact exist. *O'Connor v. Boeing N. Am., Inc.*, 184 F.R.D. 311, 319 (C.D. Cal. 1998).  A class definition should be precise, objective, and presently ascertainable.  *Id.* (citing MANUAL FOR COMPLEX LITIGATION (3rd) § 30.14, at 217 (1995)).  However, the class need not be so ascertainable that every potential member can be identified at the commencement of the action as long as the general outlines of the membership of the class are determinable at the outset of the litigation, a class will be deemed to exist."  *Id.*

Defendant argues that class certification in the present case is impossible because "extensive factual inquiries are required to determine whether individuals are members of a proposed class" and State Farm's claim files will not contain all the information necessary to determine whether an insured is a class member. (Opposition at 11-12.)  No extensive factual inquiry is needed to ascertain class membership, and State Farm fails to cite a single case to support its argument that class members must be identifiable through a defendant's files.

The cases Defendant cites are excellent examples of classes that failed due to not being objectively ascertainable, and are clearly distinguishable from the present case.  The first case involved a class definition where the court found it would have to analyze the circumstances surrounding each plaintiff's claim to

4

determine if the potential class member was actually in a jail cell that was overcrowded and whether he was subjected to deprivations of essential food, medical care, or sanitation or other intolerable conditions as a result of the overcrowding. *Napier v. Laurel County, Ky.*, No. 6:06-368-DCR, 2008 WL 544468 at *7 (E.D. Ky. Feb. 26, 2008).  The second case involved a class defined as persons who received counterfeit pills distributed by the defendant, where the class representative admitted he knew of no way to determine whether he received genuine or counterfeit pills and no way to determine whether they were distributed by the defendant. *Dumas v. Albers Med., Inc.*, No. 03-0640-CV-W-GAF, 2005 WL 2172030 at *6 (W.D. Mo. Sept. 7, 2005).  The third case involved a class of all persons who did not receive a hearing or decision of their disability "within a reasonable time" where that determination could only be made on a case-by-case basis. *Crosby v. Soc. Sec. Admin.*, 796 F.2d 576 at 579-80 (1st Cir. 1986).  The fourth case involved a class of children who had learning disabilities but had not been properly identified as learning disabled and given special education, where there was clearly no objective means of determining whether a child had a learning disability or not. *Adashunas v. Negley*, 626 F.2d 600, 603-04 (7th Cir. 1980).

In the present case, State Farm can identify (and in fact has identified) through its files all its insureds who submitted water-loss claims due to pipe leak.  These insureds can objectively demonstrate whether they had PB pipe systems and thus are class members.  PB pipe is clearly identifiable via well-known stamps and markings placed on the pipe by the manufacturer.  It can be absolutely determined

1    whether pipe is PB or not.  (*See* Exhibit A, McInnis Depo. at 46/9-47/7.)  There is no

2    requirement for subjective determination or a complicated factual inquiry here.  Pipe

3    is either PB or it is not.

4

5        In *Medrazo v. Honda of North Hollywood*, 166 Cal.App.4th 89, 95 (Cal. Ct.

6    App. 2008), a case involving assertions of Honda's failure to include required

7    "hanger tags" on some vehicles, Honda opposed Medrazo's motion for class

8    certification by arguing that the class was not ascertainable because Honda did not

9    keep records of which Honda motorcycles had hanger tags attached to them.  The

10   trial court agreed with Honda and denied class certification.  *Id.*  The appellate court

11   reversed, finding that the trial court erred when it ruled that Honda must be able to

12   identify each individual class member through objective records to satisfy the

13   ascertainability requirement.  *Id.*  The appellate court concluded that potential class

14   members may easily be identified by reference to Honda's sales records and that

15   notice could be given to all of Honda's customers who bought motorcycles during the

16   class period and the proposed class definition was sufficient to allow purchasers of

17   Hondas without hanger tags to identify themselves as members of the class.  *Id.*  No

18   more is required here.

19        Similarly, in the present case, Defendant can identify all its insureds who

20   made claims for water leaks and they can identify themselves as members of the

21   class if they can objectively demonstrate they have PB pipe.  Obviously, those who

22   cannot demonstrate that they have PB pipe would not be entitled to status as class

23

24

25

26

27

28

members.  This simple process does not mandate that the class is unascertainable.  *See id.*

### C.   Individual Issues do not Predominate Over Common Issues

The common issue in this case, which predominates over any individual issues, is whether the pipe and fittings used in PB pipe systems are so inherently defective that the only reasonable and adequate way to repair a leaking PB pipe system is to replace the PB pipe and the associated fittings with pipe and fittings made of a material that is considered suitable for use in homes by the plumbing industry.   State Farm argues that various "issues" as to liability and damages predominate over the common issues.  However, each of State Farm's arguments fails.

### 1.   Whether an Insured Had PB Pipe Is Not an Issue in the Case

In order to be a class member, an insured must have had a covered leak in a PB pipe system in his or her home.  The fact that the insured has a covered leak is demonstrated by Defendant's claim files.  The fact that the insured's leak was in a PB pipe system can be easily and objectively demonstrated by the insured by photographs, or providing a sample of the pipe (which is normally left in the walls when a repipe is performed).  Verifying an insured is a class member does not constitute an individual issue which would predominate over the common issue, and Defendant cites no authority to support this argument.  If an insured is unable to objectively demonstrate he or she had PB pipe, then the insured will be unable to participate in the Class recovery.

## 2.    Whether a Particular Plumbing System Could be Repaired Without Replacing the PB Pipe is Not an Individual Issue

Plaintiff's position in this case is that, due to the inherently defective nature of PB and the fittings used in PB pipe systems, all leaking PB systems cannot be adequately repaired without replacing the PB pipe and associated fittings.  Plaintiff appreciates that Defendant's position is that some leaking PB pipe systems can be repaired by just addressing the leaking section of the system.  However, this is a matter to be decided on the merits and does not impact the certifiability of the class.

Arguing that some of the class members might not be entitled to prevail on the merits is a tactic that has been unsuccessfully tried by defendants to defeat class certification many times in the past.  In *Burgess v. Farmers Insurance Co.*, 151 P.3d 92, 94 (Okla. 2006), the trial court certified a class of insureds who claimed they were underpaid when their insurer failed to include an amount for general contractor's overhead and profit (O&P) in payments made on their claims.  The court of appeals reversed, accepting an argument similar to the one made by Defendant in the present case—that individual issues predominated.  However, the Oklahoma Supreme Court reversed the appellate court, reinstating the trial court's certification order.  *Id.*  In *Burgess*, the plaintiffs argued that each class member (insureds whose repair estimates included three or more trades) was entitled to a 20% O&P payment. The defendant countered that only some insureds with three or more trades were entitled to an O&P payment, and that a case-by-case determination was necessary to determine which of them were entitled.  The court of appeals agreed with the defendant, but the Oklahoma Supreme Court reversed, finding that the court of

appeals, by accepting the defendant's argument was, in part, making a determination of the merits of the action. *Id.* at 94.

Similarly, in the present case, the Defendant's argument against class certification, in effect, asks the Court to accept its argument on the merits, *e.g.*, that PB is not inherently defective and that a case-by-case analysis must be done as to determine which leaking PB systems can be adequately repaired merely by addressing the portion of the system that is currently leaking. Plaintiff is quite confident that Defendant will lose this argument when the case gets to the merits stage because of the overwhelming consensus in the plumbing industry that, as Denny Henderson has testified, there is no adequate way to repair a PB pipe system short of replacement. However, at the class certification stage, the Court need not decide this ultimate issue. A plaintiff need not show that she is likely to prevail on the merits of her claims at the stage of class certification. *Mazza v. Am. Honda Motor Co.*, 254 F.R.D. 610, 616 (C.D. Cal. 2008) (citing *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 178 (1974)). "Although some inquiry into the substance of a case may be necessary to ascertain satisfaction of the commonality and typicality requirements of Rule 23(a), it is improper to advance a decision on the merits to the class certification stage." *Id.* at 616 (citing *Moore v. Hughes Helicopters, Inc.*, 708 F.2d 475, 480 (9th Cir.1983); *Eisen*, 417 U.S. at 177-78, and *Staton v. Boeing Co.*, 327 F.3d 938, 954 (9th Cir.2003)).

Under Plaintiff's theory, it does not matter what caused the leak. Furthermore, it does not matter what caused a homeowner to decide to re-pipe rather than just

patch the leaking portion of the system.  The Tear-Out provision covers access costs necessary to "repair the system."  If, upon consideration of the merits, the jury agrees with the Plaintiff that a reasonable repair of a PB pipe system can never be effectuated just by addressing the currently leaking portion of the system, then the cause of the leak, the homeowner's decision-making process, and all of the other alleged "individual issues" fabricated by Defendant will be irrelevant.

### D.    The Need to Determine Damages on a Case-by-Case Basis is No Hurdle to Class Certification

Reaching for an oft-raised and consistently rejected argument against certification, State Farm claims that the possible need to calculate individual damages bars certification of the Class.  (Opposition at 22.)  The individualized questions are so prevalent, State Farm argues, that Plaintiff cannot meet the predominance requirement.  (*Id.*)  State Farm is simply wrong.

Countless courts have concluded that individual damages questions do not defeat classwide predominance.  Indeed, as the Ninth Circuit stated more than thirty years ago, "[t]he amount of damages is *invariably an individual question* and does not defeat class action treatment."  *Blackie v. Barrack*, 524 F.2d 891, 905 (9th Cir. 1975) (emphasis added).  If State Farm's position were adopted, no class would ever be certified unless each class member had identical damages.  Just this year, in fact, a court in the Central District of California certified a class for employees who claimed a transportation company failed to comply with California law governing, among other things, pay due for meal and rest breaks.  *Ortega v. J.B. Hunt Transp., Inc.*, ___ F.R.D. ___, No. 2:07-cv-08336 FMC-JCx, 2009 WL 1851330, at *7-8 (C.D.

Cal. May 18, 2009).  The defendant argued, of course, that the individual questions surrounding this type of damages claim defeated class certification.  *Id.*  The court disagreed, noting that "the determination of damages on a class-wide basis is not likely to present a particularly complex or burdensome task" because if the plaintiff was correct on the merits, the break and meal-period pay would be due each driver for each day worked.  *Id.* at *8.

The same logic applies here.  If, as the Court recognized in its denial of State Farm's Motion to Dismiss, Plaintiff can prove her claim on the merits, then each class member is due the tear-out costs for replacing all the PB pipe and associated fittings.  (*See* Dkt. # 25 at 4.)  The court's predominance conclusion in *Ortega*, that "questions of law and fact common to all potential class members predominate over any questions affecting only individual members in connection with Plaintiffs' rest and meal break claims," is easily and properly grafted onto the facts of this case. 2009 WL 1851330, at *8.  The Court should therefore not deny class certification based on the existence of individualized damages questions.  *See Bibo v. Fed. Express, Inc.*, No. C 07-2505 TEH, 2009 WL 1068880, at *10 (N.D. Cal. April 21, 2009) ("[T]he Ninth Circuit has made clear that differing amounts of damages does not defeat class certification."); *Kamar v. Radio Shack Corp.*, 254 F.R.D. 387, 399 (C.D. Cal. 2008) ("Predominance is a comparative concept, and 'the necessity for class members to individually establish eligibility and damages does not mean individual fact questions predominate.'")

State Farm also argues that individual damages in this case are dependent on the settlement in *Cox v. Shell Oil Co.*, No. A. No. 18844, 1995 WL 775363, at *1 (Tenn. Ct. Ch. Nov. 17, 1995) which provided certain potential class members with re-plumbs of their PB-equipped homes at no charge to the homeowners. (Opposition at 23.) This is no hurdle to class certification.  Defendant's insureds who obtained a re-plumb as part of the *Cox* settlement, and thus did not incur or pay any access costs, can simply be carved out of the Class or, alternatively, can be considered Class Members with no damages.

**E.     Any Potential Differences in State Law Do Not Prevent Class Certification in Breach of Form Contract Cases**

**1.     Courts Routinely Certify Classes in Cases Involving Breach Of a Form Contract Without Choice of Law Analysis**

State Farm claims that "the difficulty of applying the law of multiple and the lack of predominance of common legal issues" present in this case is fatal to class certification.  (Opposition at 26.)  This is so, the argument goes, because Plaintiff has not extensively analyzed state law variances for breach of contract so as to establish that there are no conflicts among the states' common law.  *Id.*  This argument fails for multiple reasons.

First, State Farm bases this argument on cases that are inapposite because they are tort cases, not breach of contract cases.  (*See* Opposition at 26-27 (citing *In re Bridgestone/Firestone, Inc.*, 288 F.3d 1012 (7th Cir. 2002); *Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180 (9th Cir. 2001); *Spence v. Glock Ges. m.b.h.*, 227 F.3d 308 (5th Cir. 2000); *Endo v. Albertine*, No. 88 C 1815, 1995 WL 170030,

at *1 (N.D. Ill. April 7, 1995); *Castano v. Am. Tobacco Co.*, 84 F.3d 734 (5th Cir. 1996); *Estate of Robert S. Felts v. Genworth Life Ins. Co.*, 250 F.R.D. 512 (E.D. Wash. 2008); *In re McDonald's French Fries Litig.*, ___ F.R.D. ___, No. 06 C 4467, 2009 WL 1286024, at *1 (N.D. Ill. May 6, 2009)).)  Second, the only case that State Farm cites as support for this proposition that involved a breach of contract claim, *Lozano v. AT&T Wireless Services, Inc.*, 504 F.3d 718 (9th Cir. 2007), discussed difficulties with the laws of multiple jurisdictions as they related to the unconscionability of class action waivers in consumer contracts. *See id.* at 728. Here, no such problem exists, making *Lozano* likewise inapposite on this point.

State Farm's reliance on tort cases for its choice of law discussion in a breach of contact case is particularly telling, given that "[a]n overwhelming number of courts have held that claims arising out of form contracts are particularly appropriate for class action treatment." *Dupler v. Costco Wholesale Corp.*, 249 F.R.D. 29, 37-38 (E.D.N.Y. 2008) (citing cases from the Second, Seventh, Tenth, and Eleventh Circuits holding likewise).  Generally, courts do not require comparative analysis in cases where a form contract is involved and the central legal issue is whether the defendant breached that contract. *Id.*; *see Klay v. Humana, Inc.*, 382 F.3d 1241, 1262-63 (11th Cir. 2004) ("A breach is a breach is a breach, whether you are on the sunny shores of California or enjoying a sweet autumn breeze in New Jersey."); *Indianer v. Franklin Life Ins. Co.*, 113 F.R.D. 595, 607 (S.D. Fla. 1986), *overruled in part on other grounds by Ericsson GE Mobile Comm'ns., Inc. v. Motorola Comm'ns. & Elecs., Inc.*, 120 F.3d 216, 219 n. 12 (11th Cir.1997) ("Whether [a] contract[ ] . .

. has been breached is a pure and simple question of contract interpretation which should not vary from state to state."); *Kleiner v. First Nat'l Bank of Atlanta*, 97 F.R.D. 683, 694 (N.D. Ga. 1983) ("The application of various state laws would not be a bar where, as here, the general policies underlying common law rules of contract interpretation tend to be uniform."); *see also Steinberg v. Nationwide Mut. Ins. Co.*, 224 F.R.D. 67, 79 (E.D.N.Y. 2004) (holding that common questions of fact existed as to breach of contract claims since all putative class members signed substantively identical agreements).

Here, the same logic applies.  State Farm issued an insurance policy (which is a form contract) to all members of the proposed Class, and the key question is whether the Tear-Out Provision in the contract requires State Farm to pay the access costs required to repair the entire system or just the access costs required to repair the leaking portion of the system.  Contrary to State Farm's assertions, no multi-state inquiry is necessary to answer this question.  *See Klay*, 382 F.3d at 1263.

## 2. State Farm Posits No State Law "Variances" That Affect this Case

State Farm's claim that "contract law varies significantly from state to state" (Opposition at 31) must also fail, for the same reasons given above.  The cases State Farm cites for this premise deal with ambiguities and contractual interpretation using extrinsic evidence.  *Id.* (citing *Paster v. State Farm Mutual Auto. Ins. Co.*, No. 05 C 1459, 2005 WL 2453900, at *9 (N.D. Ill. Sept. 30, 2005) and *Jim Moore Ins. Agency, Inc. v. State Farm Mutual Auto. Ins. Co.*, No. 02-80381-Civ., 2003 WL 22097937, at *1-2 (S.D. Fla. Sept. 2, 2003)).  Here, no such problem exists.  There

14

is no ambiguity—and therefore no need to know how Delaware, for example, would treat or interpret one—making the question of breach of the form contract straightforward and routine, as many courts have recognized. *See Dupler*, 249 F.R.D. at 37-38.

Furthermore, State Farm's attempt to craft a state-law problem by citing decisions that might propose differing definitions of the word "repair" or application of the doctrine of reasonable expectations is also futile. (Opposition at 31, 33.) The Court has already concluded that "[t]he tear-out provision applies to the non-leaking pipe if the non-leaking pipe is part of the system that caused the covered loss," and that Plaintiff must show only that "the system that caused the covered loss includes all the pipes in her house and it was necessary to replace all the pipes to repair that system." (Dkt. # 25 at 4,5.) Given the simplicity of these Court pronouncements and the general, irrefutable knowledge that PB is absolutely unsuitable for use in plumbing systems, how Missouri or Wisconsin courts define the word "repair" or interpret the parties' reasonable expectations is irrelevant to the certification of the Class in this case.

**3.    Varying Statutes of Limitations or Accrual Rules Do not Defeat Class Certification**

State Farm also trots out a long-dispelled argument against predominance: that different states' statutes of limitations for breach of contract prevent certifying a class. (Opposition at 35.) This issue is so well settled that it barely warrants discussion. Courts across the country have repeatedly rejected this very argument at the class certification stage, and this Court should do likewise.

Simply put, the possible application of different statutes of limitations does not destroy predominance.  "Several courts have held that possible differences in the application of a statute of limitations to individual class members does not preclude certification of a class action so long as the claims meet the necessary commonality and predominance requirements."  *E. Maine Baptist Church v. Union Planters Bank, N.A.*, 244 F.R.D. 538, 548-49 (E.D. Mo. 2007) (citing cases from the First and Ninth Circuits holding similarly).  Indeed, as one New York District Court observed:

> Courts have been nearly unanimous . . . in holding that possible differences in the application of a statute of limitations to individual class members, including the named plaintif[f], does not preclude certification of a class action so long as the necessary commonality and, in a 23(b)(3) class action, predominance, are otherwise present.

*Steinberg*, 224 F.R.D. at 78 (internal citations omitted, alterations in original).  In analyzing this issue, these courts have concluded that a statute of limitations defense that may affect class members differently does not necessarily mean that individual issues subvert class issues.  *E. Maine Baptist Church*, 244 F.R.D. at 549.  To satisfy the predominance requisite, "[a]ll class members need not be identically situated upon all issues, so long as their claims are not in conflict with each other."  *In re Synthroid Marketing Litigation*, 188 F.R.D. 287, 292 (N.D. Ill. 1999) (quoting *Cannon v. Cherry Hill Toyota, Inc.*, 184 F.R.D. 540, 545 (D.N.J. 1999)).  Here, Class Members have no conflict among their claims; the claims are identical.  Accordingly, a possible difference in statutes of limitations does not defeat class certification.  *See id.* at 291 ("Rule 23(a)(3) mandates the typicality of the named plaintiffs' *claims*—not *defenses*.") (emphasis added).

16

1
2

### 4.   State Farm Posits No State Law "Variances" That Affect this Case

3     State Farm argues that differences in state law regarding offset (*e.g.*,
4
5 reduction in damages to reflect other compensation received) prevents class
6 certification because many insureds may have recovered compensation from the
7 *Cox* settlement.  (Opposition at 38-40.)  Plaintiff is agreeable to excluding from the
8 Class those who received compensation in *Cox*, so this will become a nonissue.

9     Aside from Plaintiff's agreement to exclude those who recovered
10
11 compensation in *Cox*, however, a defendant's potential counterclaim against class
12 members does not bar class certification where, if successful, they would only
13 reduce damage awards and not impact a finding of liability.  *Vulcan Golf, LLC v.*
14
15 *Google Inc.*, 254 F.R.D. 521, 530-31 (N.D. Ill. 2008) (citing *Haynes v. Logan*
16 *Furniture Mart*, 503 F.2d 1161, 1165 n. 4 (7th Cir. 1974)).  The possibility of offsets
17 would potentially affect the amount of damages; however, the need to adjudicate
18 varying amounts of damages for class members has been held not to be a reason,
19
20 in and of itself, to deny class certification.  *Moye v. Credit Acceptance Corp.*, No.
21 990157073, 2001 WL 589101 at *4 (Conn.Super. May 15, 2001), (citing *Marr v.*
22 *WMX Techs.*, 711 A.2d 700, 703 (Conn. 1998)).

23
### 5.   Variance in Law Regarding Bad Faith and Punitive Damages Does not Defeat Class Certification
24

25     Plaintiff has dropped her claim for classwide punitive damages, so the
26 variance in state law regarding bad faith and punitive damages is no longer an issue.
27
28 Those Class Members who wish to pursue bad faith claims can opt out of the Class.

**F.      Class Action is Superior to Other Available Methods for Fair and Efficient Adjudication of the Controversy and the Class Action is Manageable**

**1.      The Trial Plan is Simple**

In her Motion, Plaintiff admittedly did not include a plan for the trial of this case.  A review of Ninth Circuit authority, however, does not provide a clear answer as to whether such a plan is required at this stage.  *Compare Chamberlan v. Ford Motor Co.*, 402 F.3d 952, 961 n.4 (9th Cir. 2005) (per curiam) ("We decline Ford's suggestion that the district court's failure to adopt a trial plan or to articulate how the class action would be tried was an abuse of discretion. . . .  Nothing in the [Rule 23] Advisory Committee Notes suggests grafting a requirement for a trial plan onto the rule.") *with Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1189 (9th Cir. 2001) ("Because Zinser seeks certification of a nationwide class for which the law of forty-eight states potentially applies, she bears the burden of demonstrating 'a suitable and realistic plan for trial of the class claims.'").  Because this conflicting authority does not obligate a trial plan nor foreclose the need for one at this stage, Plaintiff submits the following trial plan out of an abundance of caution.

Initially, Plaintiff proposes to try liability.  Plaintiff will introduce conclusive and overwhelming evidence demonstrating that the only adequate way to repair a leaking PB pipe system is to replace the PB pipe and associated fittings with pipe and fittings made of a material that is considered suitable in the plumbing industry for use in homes.  Also during this phase, the Defendant will have the opportunity to introduce evidence in support of its limitations defense.  The statutes of limitations

can be grouped by state according to the length of the limitations period and, through Defendant's records, could be compared against the claims for plumbing leaks filed during the applicable periods.  Plaintiff anticipates that the parties will be able to agree to narrow the Class by excluding those individuals whose statutory period for filing a breach-of-contract lawsuit against State Farm has expired.

If the jury agrees with Plaintiff's position on the merits, the jury's findings of fact—combined with the Court's prior rulings of law—will result in a judgment that in the event of a covered water loss involving a pipe system which includes PB pipe, State Farm's policy requires it to pay its insureds the access cost associated with the tear-out and replacement of the PB pipe and associated fittings.  State Farm would then be required to notify its insureds who have submitted covered claims for water losses during the Class period in the past, that if their water loss involved a PB pipe system, their policy entitles them to be compensated for these tear-out costs.  State Farm will also be required in the future to advise its insureds who experience water leaks in PB systems in a truthful manner regarding the coverage provided by the Tear-Out provision.

**G.    Certification of Injunctive Class is Appropriate**

**1.    Explanation is Necessary to Permit Class Members to Understand Coverage Provided by Tear-Out Provision**

Plaintiff is making a claim for monetary damages; however, she is also making a claim for injunctive relief in addition, and as an alternative, to her claim for monetary damages.

## 2.   Cohesiveness

State Farm claims that the proposed class lacks cohesiveness, making the same arguments it used to attack the predominance of common issues in its Rule 23(b)(3) analysis.  As stated above, the class satisfies the requirement that common issues predominate over individual issues.  For the same reasons, the class satisfies the cohesiveness requirement for the Rule 23(b)(2) analysis.

State Farm argues that the law differs regarding its duty to disclose coverage, citing cases from a handful of states that supposedly hold no such duty exists. (Opposition at 51, n.134.)  State Farm is wrong.  Not a single case cited by State Farm stands for the proposition that an insurer lacks the duty to explain coverages to a homeowner making a claim on his or her policy.  State Farm's case citations are, at best, misleading.

State Farm cites *Darlow v. Farmers Insurance Exchange*, 822 P.2d 820, 828 (Wyo. 1991) and *Gatlin v. Tennessee Farmers Mutual Insurance Co.*, 741 S.W.2d 324 (Tenn. 1987), both of which were cases involving car insurance where the issue was which of the driver's insurance provided coverage. *Darlow* cited *Gatlin*, holding, "We believe the Tennessee Rule appropriately states the obligations of the insurer. Under this formulation, the duty of good faith and fair dealing includes informing an insured as to coverage and policy requirements when it is apparent to the insurer that (1) there is a strong likelihood that its insured only can be compensated fully under her own policy and (2) the insured has no basis to believe that they must rely upon their policy for coverage."  Obviously, these cases involving car wrecks and

coverage under multiple drivers' auto policies provides no support to State Farm here.

Similarly, the holding in *Kronjaeger v. Buckeye Union Ins. Co.*, 490 S.E.2d 657, 674 (W. Va. 1997) also has no relevance to this case.  That case concluded "that an insurer has no affirmative duty either (1) to notify its insured of the existence of underinsured motorist coverage or (2) to advise its insured that he/she must obtain the insurer's consent to settle prior to settling his/her claims with a tortfeasor." State Farm's Alabama case, *Pitts v. Boody*, 688 So.2d 832, 835 (Ala. Civ. App. 1996), deals with uninsured motorist coverage and discusses the hybrid nature of that coverage in that it blends the features of both first-party and third-party coverage.

It is disturbing that State Farm would cite these clearly inapplicable car insurance cases to the Court in order to support its frivolous argument that in certain states it has no duty to explain coverages to its own insureds making property claims under their homeowner's insurance.  Plaintiff presumes this is an argument created by Defendant's counsel in this litigation and is not Defendant's actual position.  If this is truly State Farm's position, the Departments of Insurance in those states would probably be interested  in knowing this.

Moreover, State Farm acknowledges its duty to disclose coverage on a nationwide basis.  Susan Hood, State Farm's Vice President in charge of claims, wrote about State Farm's Commitment to its Policyholders.

> Our policyholders place their trust in State Farm when they purchase insurance from us, and when they have a claim, we take pride in

keeping our promise to them to pay what we owe, promptly, courteously, and efficiently.
          Our Commitment is about our responsibilities in Claims. . . .  To me, Our Commitment is all about . . .

•**Explaining coverages**.  It's such an important part of our job in Claims to explain to our policyholders all coverages available to them. This can be complex sometimes, but we must take time to thoroughly review the policy and circumstances of the loss in order to ensure our policyholders receive the full benefits of their coverages according to the terms of their policy.  This is just the right thing to do. . . .

State Farm Claims Quarterly (Winter 2007).[1]  Plaintiff could not agree more, and fully expects State Farm to drop this frivolous position when this case reaches trial on the merits.  For present purposes, Plaintiff has adequately alleged that State Farm owes a duty to explain coverages to its policyholders.  Accordingly, if after the trial on the merits, the Court agrees with Plaintiff that the only reasonable way to repair a PB system is to access the entire system, then State Farm will have a duty to explain this coverage to its policyholders who experience leaks in their PB systems (especially since State Farm's policy has always been to tell its policyholders that the Tear-Out provision only covers the cost of accessing the leaking section of the system).

**3.     Standing to Assert Injunctive Class Claim**

State Farm also claims that the Class cannot be certified because Ms. Guadiana no longer has PB pipe or State Farm homeowners insurance, eliminating

---

[1]  See also State Farm's "Commitment to our Policyholders" which states, "It is the responsibility of the State Farm claim staff to implement Company philosophy with respect to claim handling.  Our Commitment to Our Policyholders is to treat them like a good neighbor.  We should . . . Explain all relevant coverages under the policy. . . ."

her standing to represent the Class.  (Opposition at 52.)  The answer, however, is not so simple, as special standing rules apply to class representatives.

While there is no disputing that Ms. Guadiana is a member of the Class because she had PB pipe in her home and State Farm refused to pay the tear out costs to replace her PB system, her claim for injunctive relief to change State Farm's practices going forward may now be moot because her home currently has no PB pipe and she is not a State Farm insured.   But, the possible mootness of Ms. Guadiana's request for injunctive relief does not end the certification inquiry.  Simply put, Ms. Guadiana may continue to represent the Class even though her individual claim may be rendered moot.  *Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed Care, L.L.C.*, 433 F.3d 181, 199 (2d Cir. 2005) (citing *Martens v. Thomann*, 273 F.3d 159, 173 n.10 (2d Cir. 2001)).   Indeed, courts generally recognize that even though a class representative's claim may be mooted as the litigation progresses, the individual may continue to represent the class:

> Although, upon certification of a class, the class representative must have individual standing, *see* 3 NEWBERG ON CLASS ACTIONS § 2.06 (1992), class representatives may continue to represent a class even if their individual claims become moot.

*Martens*, 273 F.3d at 173 (citing *United States Parole Comm'n v. Geraghty*, 445 U.S. 388, 404 (1980) and *Sosna v. Iowa*, 419 U.S. 393, 402 (1975)); *see Cleaver v. Wilcox*, 499 F.2d 940, 942 (9th Cir. 1974) ("The termination of the controversy of the named class representative will not operate as a dismissal or render moot the action of the class, or prevent the named plaintiff from litigating the issues on behalf of the

class, despite the lack of remaining stake, so long as the named plaintiff initially had standing to bring the action.").

The same logic should apply here. Ms. Guadiana may absolutely represent the Class because she had a PB pipe leak and State Farm refused to pay the costs to tear out the remaining PB pipe so that Ms. Guadiana could pay to have it replaced. As to the claim for injunctive relief, the Court should not decline to certify the Class if it concludes that Ms. Guadiana lacks standing to assert the injunctive relief claim. Rather, the Court should certify the Class and permit the substitution or addition of a class representative with standing to assert this claim.

## H.    Numerosity

In Defendant's "everything but the kitchen sink" philosophy of legal briefing, Defendant continues to challenge numerosity, irrespective of the permissive standard of proof for numerosity (which permits the use of common sense assumptions) and the lack of support for its argument.

Defendant cites an unreported Arizona case, *Rodriguez v. Schriro*, 2007 WL 4200762 (D.Ariz. Nov. 27, 2007) where a *pro se* prisoner with hepatitis and cirrhosis of the liver sued the state of Arizona for refusing to pay for him to have a liver transplant. *Id*. at *1. He attempted to assert his claim on behalf of a class of all other prisoners confined in the particular prison complex where he resided who also had hepatitis C and were also being denied a liver transplant. *Id.* Not surprisingly, he did not demonstrate anything to satisfy numerosity (or any of the other elements of Rule 23) and the court denied class certification. *Id*. at *2.

Defendant also cites *Hum v. Dericks*, 162 F.R.D. 628 (D.Hawaii 1995), a case involving 200 patients of a single clinic in Hawaii who had artificial ligaments implanted which had not received FDA approval.   In *Hum*, the putative class consisted of 39 identified likely class members all of whom signed an  affidavit supporting the plaintiff.  *Id.* at 634-35.  The court found that the plaintiff could not establish that joinder was impractical since these 39 likely class members, were already represented by class counsel, and any additional class members interested in litigation (of whom there were only an additional 161) could easily be joined.  *Id.*

Obviously these cases (involving the residents of a single prison facility who need a liver transplant, and the patients of a single clinic who received artificial ligaments) have nothing whatsoever in common with the present case involving homeowners dispersed throughout the country when it comes to a numerosity analysis.  Furthermore, the lack of any showing of numerosity in *Hum* and *Rodriguez* cannot be compared with the present case involving admissions by the Defendant and common sense assumptions based on the Defendant's sample file production. Defendant has no good faith basis for contesting numerosity based on the facts of this case and the legal standard for demonstrating numerosity.

**I.**     **Plaintiff is an Adequate Class Representative**

**1.**     **Abandonment of Claims for Punitive Damages**

Ms. Guadiana's abandonment of her claim for punitive damages does not mean she is inadequate.  Class representatives in a class action, with the advice and guidance of class counsel, necessarily have to apply their judgment in

evaluating the merits and certifiability of various potential claims to determine which claims to pursue on behalf of the class.  Because of potential individual issues involved in determining bad faith and entitlement to punitive damages, Plaintiff and her counsel have decided not to pursue these claims.

Defendant cites cases involving class representatives abandoning claims for personal injury to pursue only claims for economic damages. (Opposition at 56-57.) Obviously, these cases are inapposite.  Furthermore, courts understand that class representatives in almost every class action forego potential individual claims which are not suitable for class treatment in order to focus on common claims.  This is common and necessary and is no grounds for denying class certification.

> Refusing to certify a class because the plaintiff decides not to make the sort of person-specific arguments that render class treatment infeasible would throw away the benefits of consolidated treatment.  Unless a district court finds that personal injuries are large in relation to statutory damages, a representative plaintiff must be allowed to forego claims for compensatory damages in order to achieve class certification. When a few class members' injuries prove to be substantial, they may opt out and litigate independently.

*Murray v. GMAC Mortgage Corp.*, 434 F.3d 948, 953 (7th Cir.2006).  Finally, any class members who wish to pursue bad faith claims based on any individual facts in their case have the option of opting out.

### 2. Plaintiff's Relationship with Class Counsel Does Not Impact Her Ability to Adequately Represent Class

Finally, Defendant argues that Ms. Guadiana cannot adequately represent the class because she is employed by local counsel, Joseph Watkins.  Defendant has

no authority that a class representative cannot be adequate just because she is employed by local counsel for the class.

In *In re Cardizem CD Antitrust Litigation*, 200 F.R.D. 326, 337 (E.D. Mich. 2001) the court held:

> [T]he mere fact that [the named plaintiff's] son is employed as an associate with liaison counsel [for the plaintiff class] . . . is insufficient to create a conflict of interest and thus render him an inadequate class representative.  As the courts routinely observe, a named plaintiff will not be disqualified simply because of a close or familial relationship with one of the attorneys representing the class.

The *Cardizem* court cited *Lewis v. Goldsmith*, 95 F.R.D. 15, 20 (D.N.J.1982) for the proposition that "it would seem a bit anomalous that an individual whose uncle has developed a reputation as a competent securities lawyer should be prohibited from turning to his uncle for assistance if he has a legitimate claim." *Id.*  Similarly, it would be anomalous to prohibit Ms. Guadiana, who works for a firm that specializes in suing insurance companies, from bringing her dispute with her insurance company to the law firm where she is employed.  Notably, the Watkins firm has associated as co-counsel, Caddell & Chapman, a firm which specializes in class actions and which has no employment or family relationship with Ms. Guadiana.

A relationship between a named plaintiff and class counsel does not equate to lack of adequate representation.  As the *Cardizem* court explained:

> Rather, there must be some evidence that the relationship at issue is likely to create a conflict of interest or otherwise compromise the ability to vigorously prosecute the action on behalf of the class. The concern is that the financial interests of the class representative may conflict with those of the class; e.g., he may seek a settlement that is not good for the class as a whole.

27

*Cardizem*, 200 F.R.D. at 337.  The *Cardizem* Court also noted that "the fact that the courts have the power to review settlement agreements for fairness will further protect any potential conflict that may arise in that context."  *Id.* at 338.

During questioning by State Farm's counsel, Ms. Guadiana testified that she is getting no compensation whatsoever from her employer relating to any fees generated from this litigation.  (Exhibit B, Guadiana Depo. at 102/18-103/21.)  When her firm prevails in a contingency fee case, she never receives any type of compensation or bonus related to the contingent-fee matter.  *Id.*  Her salary is the same regardless of the firm's success and she was promised no additional compensation related to this matter.  *Id.*  Because Ms. Guadiana's salary will be the same regardless of the outcome of this litigation, the firm of Caddell & Chapman (which has no relationship with Ms. Guadiana) is lead counsel for the putative class, and because the Court's power to review any settlement for fairness constitutes additional protection for the class, Ms. Guadiana's employment relationship with local counsel Joseph Watkins does not make her an inadequate representative for the class.

None of State Farm's authority points to a different conclusion, as the majority of the cases State Farm cites involve a class representative that was a spouse or attorney-business associate of class counsel, or the class representative *is* class counsel.  (Opposition at 58 (citing *Martin v. AT&T Wireless Corp.*, No. 2:07-CV-01127-MCE-DAD, 2008 WL 2096840, at *1 (E.D. Cal. May 16, 2008) (disqualifying class counsel that was married to class representative); *Apple Computer, Inc. v.*

*Superior Court*, 126 Cal.App.4th 1253 (Cal. Ct. App. 2005) (involving class representative that was also class counsel); *Susman v. Lincoln Am. Corp.*, 561 F.2d 86 (7th Cir. 1977) (refusing to certify class where one class representative was the attorney-partner of class counsel and the other was the attorney-partner's mother); *Lyon v. State of Ariz.*, 80 F.R.D. 665 (D. Ariz. 1978) (dismissing class claims in case where class representatives were wife and father-in-law of class counsel); *Kramer v. Scientific Control Corp.*, 534 F.2d 1085 (3d Cir. 1976) (involving class representative who sought to appoint law partner as class counsel); *Seiden v. Nicholson*, 69 F.R.D. 681 (N.D. Ill. 1976) (rejecting class representative that was also class counsel)).)  In fact, as the court noted in *Apple Computer*, courts generally reject the idea that an attorneys serve as class representatives while their business associates serve as class counsel:

> We have concluded that . . . *no member of the bar* either maintaining an employment relationship, including a partnership or professional corporation, or sharing office or suite space with an attorney class representative during the preparation or pendency of a . . . class action may serve as counsel to the class if the action might result in the creation of a fund from which an attorneys' fee award would be appropriate.

*Apple Computer*, 126 Cal.App.4th 1253, 1266-67 (citing *Kramer*, 534 F.2d at p. 1093) (emphasis added). None of State Farm's cases is applicable here because Ms. Guadiana does not have the same type of relationship to Class Counsel and she is not an attorney.

While State Farm does cite two cases in which courts raised concerns over approving a class representative that was an employee of class counsel, even that

29

authority is questionable because Ms. Guadiana is not an employee of Lead

Counsel, she is an employee of local counsel.  (Opposition at 58.)  State Farm points

to no authority that supports disqualification of the employee of local counsel acting

as a class representative.  Accordingly, the Court should reject this argument.


Dated: August 21, 2009

                          Respectfully submitted,

                           /s/ Cory S. Fein
                          Michael A. Caddell (admitted *pro hac vice*)
                          Cynthia B. Chapman (admitted *pro hac vice*)
                          Cory S. Fein (admitted *pro hac vice*)
                          csf@caddellchapman.com
                          **CADDELL & CHAPMAN, P.C.**
                          1331 Lamar, Suite 1070
                          Houston, TX 77010-3027
                          (713) 751-0400
                          (713) 751-0906 FAX

                          ATTORNEY-IN-CHARGE FOR PLAINTIFF

**JOSEPH W. WATKINS, PC**
301 South Convent Avenue
Tucson, Arizona 85701
Telephone (520) 882-9115
Facsimile: (520) 882-7708
Joseph W. Watkins (*joewlaw@cox.net*) SBN 012403

COUNSEL FOR PLAINTIFF

### CERTIFICATE OF SERVICE

       I hereby certify that on August 21, 2009, the foregoing document was filed via
the Court's ECF system, and thus served on all counsel of record pursuant to LRCiv.
5.5(h).

                                /s/ Cory S. Fein
                                Cory S. Fein

30

**EXHIBITS**

A     Excerpts from Deposition Transcript of Michael McInnis

B     Excerpts from Deposition Transcript of Rosemary Guadiana