**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

Rosemary Guadiana, Plaintiff, vs. State Farm Fire and Casualty Company, Defendant.

No. CIV 07-326 TUC FRZ (GEE)

**REPORT AND RECOMMENDATION**

Pending before the court is the defendant's motion for summary judgment pursuant to Rule 56, FED.R.CIV.P. [doc. #63] The plaintiff filed a response, and the defendant filed a reply.

The plaintiff, Rosemary Guadiana, claims the defendant breached her homeowner's insurance policy by failing to pay the costs of tearing out and replacing part of the structure when she replaced her polybutylene plumbing. The defendant, State Farm Fire and Casualty Company (State Farm), moves that this court grant summary judgment in its favor pursuant to Fed. R. Civ. P. 56.

The case has been referred to Magistrate Judge Edmonds for all pretrial matters pursuant to Local Civil Rule 72.2. Rules of Practice of the U.S. District Court for the District of Arizona.

A hearing on the motion was held on Wednesday, October 14, 2009. The motion should be granted in part. Summary judgment should be granted on the issues of bad faith, punitive damages, and injunctive relief.

FACTUAL AND PROCEDURAL BACKGROUND

Guadiana had a homeowner's insurance policy with the defendant, State Farm. (Defendant's statement of facts, ¶ 3.) On September 9, 2004, her home sustained water damage when the plumbing leaked. *Id.* at ¶ 1. Shortly after the leak was discovered, Guadiana's nephew installed a "repair coupling" to stop the leak. (Plaintiff's statement of facts, ¶ 14.)

Guadiana discovered her plumbing system was constructed with polybutylene (PB) pipe. *Id.* at ¶ 13. She was told "by two different plumbing experts that the only way to repair a PB system is to replace the PB piping." *Id.* Accordingly, she replaced all the PB pipes in her home with a different piping material. *Id.*

Guadiana's homeowner's insurance policy contains the following "tear-out" provision:

> We do not insure for any loss . . . which consists of, or is directly and immediately caused by . . .
>
> * * *
>
> f. continuous or repeated seepage or leakage of water or steam from a:
>
> (1) heating, air conditioning or automatic fire protective sprinkler system;
>
> (2) household appliance; or
>
> (3) plumbing system, including from, within or around any shower stall, shower bath, tub installation, or other plumbing fixture, including their walls, ceilings or floors;
>
> which occurs over a period of time. *If loss to covered property is caused by water or steam not otherwise excluded, we will cover the cost of tearing out and replacing any part of the building necessary to repair the system or appliance.* We do not cover loss to the system or appliance from which the water or steam escaped . . .

(Defendant's statement of facts, ¶ 6) (emphasis added). Guadiana claims State Farm is obliged, under this provision, to pay the costs incurred in tearing out and replacing that part of the structure necessary to replace her entire PB piping system. (First amended complaint.)

Guadiana provides expert evidence that her decision to replace her entire piping system was appropriate. (Plaintiff's statement of facts, ¶ 26.) Her expert opined that "[i]t is well known throughout the plumbing industry that PB pipe is not suitable for use in pipe systems and

the only adequate way to repair a leaking PB system is to replace all the PB pipe and associated fittings." *Id*.

State Farm, on the other hand, provides expert evidence that PB piping systems need not be replaced *in toto*. (Defendant's statement of facts, ¶ 20.) Its expert opined that "in may cases, PB pipe can be repaired in lieu of replacement and that a failure of PB pipe may be localized rather than systematic." *Id*.

On July 11, 2007, Guadiana filed this class action in U.S. District Court. She claims State Farm's failure to pay her entire tear-out costs is a breach of contract and a breach of the duty of good faith.

On September 14, 2007, State Farm filed a motion to dismiss for failure to state a claim upon which relief can be granted pursuant to Rule 12(b)(6). FED.R.CIV.P. This court denied the motion on September 2, 2008. In construing the tear-out provision, the court concluded as follows: "If Guadiana can establish as a matter of fact that the system that caused the covered loss includes all the pipes in her house and it was necessary to replace all the pipes to repair that system, State Farm is obligated to pay the tear-out costs necessary to replace all the pipes, even those not leaking."

On July 31, 2009, State Farm filed the instant motion for summary judgment pursuant to Rule 56, FED.R.CIV.P. [doc. #63] The plaintiff filed a response, and the defendant filed a reply.

<u>Standard of Review: Summary Judgment</u>

Summary judgment is appropriate only "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). There is a genuine issue of material fact "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The initial burden rests on the moving party to point out the absence of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the moving party has

the burden of proof at trial, that party carries its initial burden by presenting evidence showing no reasonable trier of fact could find for the nonmoving party. *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986); *United States v. Four Parcels of Real Property*, 941 F.2d 1428, 1438 (11th Cir. 1991). If the moving party does not have the burden of proof at trial, that party carries its initial burden either by presenting evidence negating an essential element of the nonmoving party's claim or demonstrating the nonmoving party cannot meet its burden at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Nissan Fire & Marine Insurance v. Fritz*, 210 F.3d 1099 (9th Cir. 2000).

Once satisfied, the burden shifts to the opponent to demonstrate through production of probative evidence that an issue of fact remains to be tried. *Celotex,* 477 U.S. at 324. "When a motion for summary judgment is properly made and supported, an opposing party may not rely merely on allegations or denials in its own pleading; rather, its response must--by affidavits or as otherwise provided in this rule--set out specific facts showing a genuine issue for trial." Fed.R.Civ.P. 56(e)(2). Summary judgment is appropriate "against a party who fails to make a showing sufficient to establish the existence of an element essential to the party's case, and on which that party will bear the burden of proof at trial." *Thomas v. Douglas*, 877 F.2d 1428, 1430 (9th Cir. 1989).

When considering a motion for summary judgment, the court is not to make credibility determinations or weigh conflicting evidence. *Musick v. Burke*, 913 F.2d 1390, 1394 (9th Cir. 1990). Instead, the court should draw all inferences in the light most favorable to the nonmoving party. *Id.*

DISCUSSION

"An insurance policy is a contract between the insurer and its insured." *Liberty Ins. Underwriters, Inc. v. Weitz Co., LLC*, 215 Ariz. 80, 83, 158 P.3d 209, 212 (App. 2007). "Courts construe the written terms of insurance contracts to effectuate the parties' intent and to protect the reasonable expectations of the insured." *Id.* (internal punctuation omitted). "If the

contractual language is clear, we will afford it its plain and ordinary meaning and apply it as written." *Id.*

Where the policy is "susceptible to different constructions," the court should begin by "examining the purpose of the clause in question, the public policy considerations involved and the transaction as a whole." *California Cas. Ins. Co. v. American Family Mut. Ins.*, 208 Ariz. 416, 418, 94 P.3d 616, 618 (App. 2004). If, after this inquiry, the court still finds ambiguity, the clause should be construed against the insurer. *Id.*

State Farm first argues the tear-out provision does not apply here because it only applies to tear out necessary to *repair* the system that caused the covered loss, not tear out necessary to *replace* the system.

The court agrees that the words repair and replace are not ordinarily synonymous. Usually, a system can be repaired short of complete replacement. Nevertheless, Guadiana provides evidence that this is an unusual case where repair of her plumbing system requires replacement of all the PB piping. The following question is thus presented: Where repair of a piping system requires complete replacement, does the tear-out provision apply? The court will begin by "examining the purpose of the clause in question, the public policy considerations involved and the transaction as a whole." *See California Cas. Ins. Co.,* 208 Ariz. at 418, 94 P.3d at 618.

According to State Farm, the purpose of the tear-out provision is to "facilitate repair of the leak in order to stop the influx of water that is causing the covered loss." (Defendant's motion, p. 10). This is a sensible goal that conserves money for both State Farm and its insured. With this purpose in mind, the court concludes the tear-out provision should cover those unusual cases where repair of a system requires total replacement.[1]

---

[1] The court assumes for the purposes of this motion that the "system" that caused the covered loss is the BP piping system, which was replaced *in toto*. At the motion hearing, counsel for the plaintiff explained that, in fact, some portion of Gaudiana's piping system was constructed with copper piping. (R.T. p. 16); [doc. # 93] These pipes were not replaced. One could argue that the system that caused the covered loss was Guadiana's plumbing system which consisted of all the pipes in her house, including the copper ones. In that case, replacing all the PB pipes was not a replacement of the entire

There appears to be no reason why a system that requires complete replacement should be treated any differently than a system that can be repaired short of complete replacement. Both systems need to be fixed in a timely and competent manner in order to limit the covered loss and prevent losses in the future. State Farm does not explain why such a distinction should be made, and the court sees no logical reason why the two system types should be treated differently. The court concludes State Farm's construction of the tear-out provision does not facilitate the purpose of the clause in question.

Moreover, State Farm's construction does not comport with considerations of public policy. Guadiana provides evidence that the only way to repair her system was to replace all the existing PB piping. While this relatively drastic method of repair is no doubt unusual, there is no evidence that it is otherwise unheard of in the world of plumbing (or heating, air conditioning, or automatic fire protection). There must be some occasions when replacement is the appropriate, standard, or most cost-effective method for repairing a plumbing system.

Nevertheless, under State Farm's construction of the policy, tear-out costs would be paid if a plumbing system is repaired but would not be paid if the system is replaced, regardless of which method was most appropriate or cost-effective. State Farm's construction would discourage replacement even if the resulting cost to both the homeowner and State Farm was less than it would be if the plumbing system were repaired. This policy construction could result in wasteful spending contrary to public policy.

Finally, the court concludes State Farm's construction does not facilitate the purpose of the insurance policy as a whole. This provision, like most insurance provisions, is designed to make the homeowner whole after an unforseen loss. (Defendant's motion, p. 12.) There is no reason why a homeowner with a system that can only be repaired by replacement would have any less desire or need for recompense after suffering a covered loss. State Farm's construction, however, makes a homeowner whole (at least as far as tear-out costs) if her piping system can

---

system.

be repaired but not if the appropriate, cost-effective solution is replacement. This construction does not support the purpose of the policy as a whole.

After "examining the purpose of the clause in question, the public policy considerations involved and the transaction as a whole," the court concludes that State Farm's construction of the tear-out provision does not "effectuate the parties' intent" or "protect the reasonable expectations of the insured." *See California Cas. Ins. Co.*, 208 Ariz. at 418, 94 P.3d at 618; *Liberty Ins. Underwriters, Inc.*, 215 Ariz. at 83, 158 P.3d at 212. The tear-out provision applies even if repair of the system that caused the covered loss requires complete replacement.

State Farm maintains the "pertinent dictionary definition of 'repair' is 'to restore by *replacing a part* or putting together what is torn or broken'" citing Merriam Webster's Collegiate Dictionary, 11th ed. (Defendant's motion, p. 8) (emphasis in original). Accordingly, State Farm argues that replacing *all* parts cannot be considered a "repair" and would not fall within the explicit terms of the tear-out clause. The same dictionary, however, gives an alternate definition for repair – "to restore to a sound or health state." This definition more accurately reflects the purpose behind the tear-out clause.

State Farm cites a number of cases for the proposition that the words repair and replace are not synonymous. None of these cases, however, analyze a situation where repair of a system requires complete replacement. Accordingly, they are of limited applicability to this case. *See, e.g.*, *Schiernbeck v. Davis*, 143 F.3d 434, 440 (8th Cir. 1998) ("[I]t is impracticable, as well as unwise to attempt to lay down any rule on what constitutes a repair, but each case must be decided in the light of all the facts and circumstances presented.") (internal quotation marks and citation omitted).

State Farm further argues the word "repair" is separate and distinct from the word "replace" and should be treated as such because the phrase "repair or replace" is used elsewhere many times in the policy. State Farm maintains that if the tear-out provision were meant to apply where the leaking system is replaced then the tear-out provision would have included the phrase "repair or replace" instead of the word "repair." The court does not agree.

If the hypothetical change were made, the tear-out provision would read as follows: "If loss to covered property is caused by water or steam not otherwise excluded, we will cover the cost of tearing out and replacing any part of the building necessary to *repair or replace* the system or appliance." Written this way, State Farm would be obligated to pay the tear-out costs necessary to repair the system *or* necessary to replace the system after a covered loss. State Farm would have to pay tear-out costs when a system is replaced even if replacement were not necessary to "restore the system to a sound or health state." Replacing the word "repair" with the phrase "repair or replace" could lead to waste contrary to the expectations of the parties and contrary to public policy. Accordingly, the fact that the tear-out provision contains the word "repair" and not the phrase "repair or replace" does not convince the court that the tear-out provision should not apply if repair requires total replacement.

Finally, State Farm argues it is not obligated to pay tear-out costs because payment would not be consonant with other policy provisions. State Farm maintains it is not obligated to pay tear-out costs to replace all of the PB piping because the non-leaking pipe was not a covered loss. Alternatively, State Farm argues the PB pipe was defective, and the homeowner policy does not cover deterioration or "defect . . . in materials used in construction or repair." (Defendant's motion, pp. 11-12.) The court declines to consider these arguments based on the law of the case doctrine.

"Under the law of the case doctrine, a court is generally precluded from reconsidering an issue that has already been decided by the same court, or a higher court in the identical case." *U.S. v. Alexander*, 106 F.3d 874, 876 (9th Cir. 1997). "The doctrine is not a limitation on a tribunal's power, but rather a guide to discretion." *Id.* "A court may have discretion to depart from the law of the case where: 1) the first decision was clearly erroneous; 2) an intervening change in the law has occurred; 3) the evidence on remand is substantially different; 4) other changed circumstances exist; or 5) a manifest injustice would otherwise result." *Id*. "Failure to apply the doctrine of the law of the case absent one of the requisite conditions constitutes an abuse of discretion." *Id*.

In this case, State Farm's policy construction arguments were previously raised in its motion to dismiss and rejected by this court. State Farm presents no evidence of special circumstance that would allow the court discretion to depart from the law of the case doctrine. *See U.S. v. Alexander*, 106 F.3d 874, 876 (9th Cir. 1997). Accordingly, this court is bound by the law of the case.[2]

The court recognizes that the law of the case ordinarily does not apply to issues raised on summary judgment after they were rejected on a motion to dismiss because motions for summary judgment are subject to a different standard. On a motion to dismiss, the court considers whether the plaintiff has stated a claim upon which relief may be granted assuming allegations in the complaint are true. On summary judgment, the court considers whether there is a genuine issue of material fact in light of the evidence uncovered during discovery. Here, however, State Farms asks the court, on "summary judgment", to make a ruling on the construction of the homeowner's policy as a matter of law without resorting to any additional evidence. This is essentially a second motion to dismiss raising the same issues the court has already considered and rejected. The law of the case doctrine applies in this instance. *See PDK Labs, Inc. v. Ashcroft*, 338 F.Supp.2d 1, 6-7 (D.D.C. 2004).

State Farm further argues it is entitled to summary judgment on the issues of bad faith and punitive damages. Gaudiana conceded these issues at the motion hearing. (R.T. pp. 18-19.); [doc. # 93] This portion of the motion should be granted.

State Farm also argues it is entitled to summary judgement on the issue of injunctive relief. Specifically, State Farm argues Guadiana does not have standing to regulate State Farm's future treatment of tear-out claims because she is no longer insured by State Farm.

In her amended complaint, Guadiana asks, in part, for "injunctive relief pursuant to federal and state law requiring Defendant to stop its practice of underpaying claims involving

---

[2] In the alternative, the court finds adherence to the law of the case doctrine promotes finality, maintains consistency, and conserves judicial resources. *See U.S. v. Smith*, 389 F.3d 944, 948 (9th Cir. 2004), *cert. Denied*, 544 U.S. 956 (2005). Accordingly, the court would apply the doctrine here as an exercise of discretion even if it were not bound to do so.

the replacement of PB piping systems." At the motion hearing, Guadiana explained that injunctive relief might prove necessary to inform members of the class of their right to raise tear-out claims associated with leaks that occurred during the class period. She concedes she lacks standing to assert injunctive relief for claims that will occur in the future. (R.T., p. 20.); [doc. # 93] This portion of the motion should be granted.

Finally, State Farm argues it is entitled to summary judgment because Guadiana cannot prove *her* pipes needed to be replaced. State Farm maintains that Guadiana's nephew repaired the leak shortly after it was discovered. Accordingly, there was no need for the pipes to be replaced four weeks later.

Guadiana's experts, however, testified that PB pipes cannot be successfully repaired. (Plaintiff's statement of facts, ¶¶ 14, 17.) They must be replaced. *Id*. Guadiana asserts that her nephew "installed a device to stop the leak temporarily until a proper repair could be done." (Plaintiff's statement of facts, ¶ 13.) Whether or not the nephew successfully repaired the system is a genuine issue of material fact. Accordingly, summary judgment on this issue must be denied.

State Farm notes that the nephew's repair lasted four weeks without a leak. This is *some* evidence that he successfully repaired the system. The court, however, is not to make credibility determinations or weigh conflicting evidence on a motion for summary judgment. *See Musick v. Burke*, 913 F.2d 1390, 1394 (9th Cir. 1990). Instead, the court should draw all inferences in the light most favorable to the nonmoving party. *Id.* Having done this, the court concludes a genuine issue of material fact remains on this issue.

State Farm further argues that Guadiana has not provided evidence regarding the specific condition of her pipes. For example, she has not provided evidence as to the cause of the leak or the amount of deterioration her pipes had suffered. This argument, however, overlooks the gravamen of Guadiana's position.

Guadiana's expert testified that PB pipes cannot be repaired. (Plaintiff's statement of facts, ¶¶ 19, 26.) It therefore does not matter what caused the leak or how deteriorated her pipes were.

RECOMMENDATION:

The Magistrate Judge recommends the District Court, after its independent review of the record, enter an order

Granting in part the defendant's motion for summary judgment pursuant to Rule 56, FED.R.CIV.P. [doc. #63] The motion should be granted on the issues of bad faith, punitive damages and prospective injunctive relief.

Pursuant to 28 U.S.C. §636 (b), any party may serve and file written objections within 10 days of being served with a copy of this Report and Recommendation. If objections are not timely filed, they may be deemed waived.

The Clerk is directed to send a copy of this Report and Recommendation to the parties or their counsel.

DATED this 9th day of November, 2009.

Glenda E. Edmonds
United States Magistrate Judge