**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Rosemary Guadiana, ) | No. CIV 07-326 TUC FRZ (GEE) |
| Plaintiff, ) | **REPORT AND RECOMMENDATION** |
| vs. ) | |
| State Farm Fire and Casualty Company, ) | |
| Defendant. ) | |

Pending before the court is the plaintiff's motion for class certification pursuant to Rule 23, FED.R.CIV.P. [doc. #58] The defendant filed a response, the plaintiff filed a reply, and the defendant filed a surreply.

The plaintiff, Rosemary Guadiana, claims the defendant breached her homeowner's insurance policy by failing to pay the costs of tearing out and replacing part of the structure when she replaced her polybutylene plumbing. She moves that this court certify her suit as a nationwide class action pursuant to FED.R.CIV.P. 23(b)(2) and (b)(3).

The case has been referred to Magistrate Judge Edmonds for all pretrial matters pursuant to Local Civil Rule 72.2. Rules of Practice of the U.S. District Court for the District of Arizona.

A hearing on the motion was held on Wednesday, October 14, 2009. The motion should be denied. Guadiana has not shown the law of contract interpretation across the country is so uniform that this court may apply Arizona law to all claimants.

FACTUAL AND PROCEDURAL BACKGROUND

Guadiana had a homeowner's insurance policy with the defendant, State Farm. (Amended complaint, p. 3.) On September 9, 2004, her home sustained water damage when the plumbing leaked. *Id.*

Guadiana discovered her home plumbing system was constructed with polybutylene (PB) pipe. *Id.* PB pipe is no longer used for home plumbing systems because chlorine in the water causes the pipe to become brittle and crack. *Id.* This pipe embrittlement cannot be remedied. *Id.* The only feasible method of repairing a plumbing system constructed of PB pipe is to replace all the pipe. *Id.*

Guadiana claims State Farm is obliged, under her homeowner's policy, to pay the costs incurred in tearing out and replacing that part of the structure necessary to replace her entire PB piping system. *Id.*, p. 4. State Farm believes it is only obligated to pay the costs necessary to access the portion of the pipe that was leaking. *Id.*

On July 11, 2007, Guadiana filed the instant class action in U.S. District Court. She claims State Farm's failure to pay the entire tear-out cost is a breach of contract and a breach of the duty of good faith. (Amended complaint.)

On September 14, 2007, State Farm filed a motion to dismiss for failure to state a claim upon which relief can be granted pursuant to Rule 12(b)(6). FED.R.CIV.P. This court denied the motion on September 2, 2008. The court construed the tear-out provision applying Arizona law, and assessed Guadiana's claim as follows: "If Guadiana can establish as a matter of fact that the system that caused the covered loss includes all the pipes in her house and it was necessary to replace all the pipes to repair that system, State Farm is obligated to pay the tear-out costs necessary to replace all the pipes, even those not leaking." [doc. # 29]; [doc. # 25, p. 4]

In the instant motion, Guadiana moves for class certification pursuant to FED.R.CIV.P. 23(b)(2) and (b)(3). Her proposed class is defined in pertinent part as follows:

All current or former insureds of State Farm Fire and Casualty Co. who:

(1) own or owned real property located in the United States which was

- 2 -

insured by Defendant;

(2) experienced a leak in a PB System (defined as a plumbing system which included polybutylene pipe) within the insured property, which leak was acknowledged by Defendant to result in a covered loss;

(3) incurred costs (or expended labor) for tearing out and/or replacing part of the insured property to repair the PB System ("Tear-Out Costs"); and

(4) during the Class Period either:
    (a) received payment from Defendant in response to the PB leak claim, which payment failed to include Tear-Out Costs; or
    (b) were informed by Defendant that no payment was due as a result of the PB leak claim.

For purposes of the Class Definition, the Class Period is defined as July 11, 2003 to the date class certification is granted and the class certification order becomes final.

(Plaintiff's motion, p. 2.) A hearing on the motion was held on October 18, 2009. At the hearing, Guadiana explained that she no longer intends to pursue her claims for bad faith and punitive damages.

Standard of Review

"As the party seeking class certification, [Guadiana] bears the burden of demonstrating that she has met each of the four requirements of Rule 23(a) and at least one of the requirements of Rule 23(b)." *Zinser v. Accufix Research Institute, Inc.*, 253 F.3d 1180, 1186 (9th Cir. 2001), *amended,* 273 F.3d 1266 (9th Cir. 2001). The four preliminary requirements are as follows: (1) numerosity, (2) commonality, (3) typicality, and (4) adequacy of representation. FED.R.CIV.P. 23(a).

A class may be certified pursuant to Rule 23(b)(2) if "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." FED.R.CIV.P.

A class may be certified pursuant to Rule 23(b)(3) if "the court finds that the questions of law or fact common to class members predominate over any questions affecting only

1  individual members, and that a class action is superior to other available methods for fairly and
2  efficiently adjudicating the controversy." FED.R.CIV.P.

3  "Before certifying a class, the trial court must conduct a 'rigorous analysis' to determine
4  whether the party seeking certification has met the prerequisites of Rule 23." *Zinser*, 253 F.3d
5  at 1186. "While the trial court has broad discretion to certify a class, its discretion must be
6  exercised within the framework of Rule 23." *Id*. When analyzing a motion to certify a class,
7  "[t]he court is bound to take the substantive allegations of the complaint as true. . . ." *Blackie
8  v. Barrack*, 524 F.2d 891, 901 n. 17 (9th Cir. 1975), *cert. Denied*, 429 U.S. 816 (1976).

9  State Farm argues first that the motion should be denied because Guadiana seeks to
10 certify a different class than the one proposed in her amended complaint. Her proposed class,
11 as it appears in her amended complaint, reads in pertinent part as follows:

> All policyholders who (1) own or owned real property located in the United States which was insured by Defendant, (2) submitted to Defendant a claim for a covered loss to the insured real property during the period from four years prior to the filing of the Original Complaint in this case to the present, which claim included a claim for costs for tearing out and replacing part of the building necessary to replace the entire polybutylene piping system, and (3) were paid an amount (or were not paid at all) based on an estimate that failed to include the full cost of tearing out and replacing the parts of the building necessary to replace the entire polybutylene system.

17 (Amended complaint, p. 6.) To qualify for membership in this class, a homeowner must have
18 submitted a claim for tear-out costs that included the costs necessary to replace all the PB
19 piping. In the class proposed in the instant motion, this requirement is eliminated.

20 Guadiana agrees that the class eventually certified should conform to the complaint, but
21 she intends to amend her complaint if her motion is granted. (Plaintiff's reply, p. 2.) The issue
22 then is whether amendment to the complaint would be permitted at this point in the litigation.

23 When amendment is sought after the Rule 16 deadline has passed, the party seeking
24 amendment must comply with Rule 16(b), not the more liberal standard of Rule 15(a).
25 *Coleman v. Quaker Oats*, 232 F.3d 1271, 1294-95 (9th Cir. 2000), *cert. denied*, 533 U.S. 950
26 (2001); *Johnson v. Mammoth Recreations, Inc*., 975 F.2d 604, 607-08 (9th Cir. 1992). The
27 party is effectively moving to modify the deadline as well as moving to amend the pleading.
28

A court's scheduling order "shall not be modified except upon a showing of good cause." FED.R.CIV.P. 16(b). The good cause standard focuses primarily on the diligence of the party seeking the amendment. *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 609 (9th Cir. 1992). "Although the existence or degree of prejudice to the party opposing the modification might supply additional reasons to deny a motion, the focus of the inquiry is upon the moving party's reasons for seeking a modification." *Id.* "If that party was not diligent, the inquiry should end." *Id.*

In this case, Guadiana seeks to amend the class because of information she uncovered during discovery. Specifically, she found that State Farm sent to her (and presumably to its other insureds seeking coverage for water damage) a letter explaining that State Farm's homeowner's insurance policy "does not provide coverage to tear into the building to replace the entire system, only the portion of the building necessary to repair the piece of pipe that failed and caused the water damage." (Plaintiff's motion, Exhibit B, p. 79.) Because of this letter, Guadiana believes limiting her class to insureds who actually made a tear-out claim for all the piping would miss many persons who are entitled to tear-out coverage. She therefore proposes to change her class description to include those insureds who could have made a claim but did not because they were advised by State Farm that there was no tear-out coverage for replacing all of the PB piping.

Guadiana's new theory is based primarily on the deposition testimony of Debbie Smith, State Farm claims section manager, given on April 30, 2009. (Plaintiff's reply, pp. 1-2.) Guadiana informed State Farm of her intention to amend her class definition on May 27, 2009, less than one month later. *Id.* Based on these facts, it appears that Guadiana has been diligent in her prosecution of this action. Accordingly, as a preliminary matter, there appears to be no obstacle to her amending her complaint to conform to her amended class. *See also Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 160, 102 S.Ct. 2364, 2372 (1982) (The court has broad discretion to approve a class and revisit that approval during the litigation.).

State Farm further argues Guadiana's proposed amendment unnecessarily expands the scope of the class and creates liability based on a new legal theory that State Farm is required to accurately advise its insureds of the parameters if its coverage.

Guadiana's proposed class includes homeowners who

(4) during the Class Period either:

> (a) received payment from Defendant in response to the PB leak claim, which payment failed to include Tear-Out Costs; or
>
> (b) were informed by Defendant that no payment was due as a result of the PB leak claim.

(Plaintiff's motion, p. 2.) Subsection (4)(b) apparently was designed to include those insureds who failed to make a claim for tear-out costs because they were informed by State Farm that there was no tear-out coverage for pipes that were not leaking. It achieves its goal, but it also unnecessarily interjects a new theory of liability into the action. It should be possible to achieve Guadiana's goal of expanding class membership without creating a new theory of liability. To that end, the court asked the parties at the motion hearing to comment on a proposed class reading in pertinent part as follows:

> All current or former insureds of State Farm Fire and Casualty Co. who:
>
> (1) own or owned real property located in the United States which was insured by Defendant;
>
> (2) experienced a leak in a PB System (defined as a plumbing system which included polybutylene pipe) within the insured property, which leak was acknowledged by Defendant to result in a covered loss;
>
> (3) incurred costs (or expended labor) for tearing out and/or replacing part of the insured property necessary to replace the entire polybutylene system; and
>
> (4) during the Class Period were paid an amount (or were not paid at all) that failed to include the full cost of tearing out and replacing parts of the building necessary to replace the entire polybutylene system.

*See also Hagen v. City of Winemucca*, 108 F.R.D. 61, 64 (D.C. Nev. 1985) ("Many circuits have held that the court itself may construct a definition of the class . . . or may modify a proposed definition where the original is inadequate. . . ."). This proposed class would include those homeowners who replaced their PB pipes but did not file a claim because they believed it would not be allowed. It does not introduce additional theories of liability.

- 6 -

1    At the hearing, Guadiana's counsel offered to adopt the court's hypothetical class with
2    two amendments. He would replace the phrase: "to replace the entire polybutylene system"
3    with the phrase "to replace the polybutylene pipe and fittings within the system" in paragraphs
4    (3) and (4). (R.T. p. 35.)[1] With Guadiana's amendments, this proposed class resolves State
5    Farm's objection to addressing new theories of liability.

6    State Farm further argues the proposed class is not administratively feasible or
7    ascertainable.[2] State Farm maintains it is not possible to identify the class members based on
8    information contained in its claim files. For example, the type of pipe material involved in the
9    covered leak may not be in the claim files. State Farm's objections, however, miss the mark.
10   At this point, the court need only decide if the proposed class is sufficiently definite for the class
11   members to be identified unambiguously. *Parkinson v. Hyundai Motor America*, 258 F.R.D.
12   580, 593 (C.D.Cal. 2008). It does not matter whether or not the class members can be identified
13   from the information currently contained in State Farm's claim files. *Id*. The proposed class
14   is sufficiently definite for certification.

16   Numerosity

17   A proposed class action satisfies the numerosity prerequisite if "the class is so numerous
18   that joinder of all members is impracticable." FED.R.CIV.P. 23(a)(1). "Generally, 40 or more
19   members will satisfy the numerosity requirement." *Perez v. First American Title Ins. Co.*, 2009
20   WL 2486003, *2 (D.Ariz. 2009). "The party seeking class certification need not identify the
21   precise number of potential class members." *Id*.

22   Guadiana has not precisely identified the size of the class, but it appears that it will
23   number more than 40. Debbie Smith, a State Farm claims section manager for Arizona and
24   Utah, opined that the number of PB leak claims was "[pure] guess, probably more than a

---

[1] Court reporter's transcript.

[2] State Farm's arguments against class certification were actually raised against the class as it was proposed in Guadiana's motion, but they may be applied with equal force to the reformulated class as proposed by the court and modified by Guadiana.

- 7 -

hundred." (Plaintiff's motion, Exhibit B, pp. 8, 58.) She estimated the number of PB leak claims "in the last four years in Arizona and Utah" was "[p]ure guess, more than 50." *Id.*, p. 58. A computerized search of State Farm's claim files for water leaks that mentioned the material polybutylene uncovered 4,756 claim files. (Plaintiff's motion, p. 12.) Of course, this number is not limited to persons who had a PB plumbing system, had a covered loss, and decided to replace their entire PB piping system.

Finally, Guadiana notes that after she suffered the water damage, State Farm informed her by letter that "[t]he policy does not provide coverage to tear into the building to replace the entire system, only the portion of the building necessary to repair the piece of pipe that failed and caused the water damage." (Plaintiff's motion, Exhibit B, p. 79.) Debbie Smith testified in her deposition that this letter accurately reflects State Farm's position with regards to tear-out. *Id.*, p. 80. The fact that State Farm has a specific policy regarding tear-out is some evidence that this is a recurring issue for the company. Guadiana has made a sufficient showing to satisfy the numerosity prerequisite.

Commonality

A proposed class action satisfies the commonality prerequisite if "there are questions of law or fact common to the class." FED.R.CIV.P. 23(a)(2). The rule is construed permissively. *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir.1998). "The existence of shared legal issues with divergent factual predicates is sufficient, as is a common core of salient facts coupled with disparate legal remedies within the class." *Id.*

This case presents common questions of fact and law: Is it necessary to replace all the PB piping whenever there is a leak, and does the tear-out provision apply to access piping that was not leaking?

Typicality

A proposed class action satisfies the typicality prerequisite if "the claims or defenses of the representative parties are typical of the claims or defenses of the class." FED.R.CIV.P.

23(a)(3). "[U]nder the rule's permissive standards, representative claims are 'typical' if they are reasonably coextensive with those of absent class members; they need not be substantially identical." *Staton v. Boeing Co.*, 327 F.3d 938, 957 (9th Cir. 2003).

Here, Guadiana is in the same factual and legal posture as are the class members. She had a PB plumbing system in her home. She was insured by the defendant, State Farm. She suffered a covered loss when her plumbing sprang a leak. She replaced all her piping because she believed that was the only means of repairing a PB plumbing system. She was not reimbursed for her tear-out costs incurred in replacing all her pipes. Guadiana's claims are typical of the class members.

Adequacy

Rule 23(a)(4) permits the certification of a class action only if "the representative parties will fairly and adequately protect the interests of the class." FED.R.CIV.P. 23(a)(4) "To determine whether the representation meets this standard, we ask two questions: (1) Do the representative plaintiffs and their counsel have any conflicts of interest with other class members, and (2) will the representative plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Staton v. Boeing Co.*, 327 F.3d 938, 957 (9th Cir. 2003).

Guadiana asserts in her declaration that she has participated actively in the prosecution of her action and she intends to continue to vigorously pursue her claim. (Plaintiff's motion, Exhibit E.) Her counsel, Michael A. Caddell, asserts in his declaration that he, his law firm, and associate counsel have the resources, skill, and experience necessary to prosecute the action. (Plaintiff's motion, Exhibit F.)

State Farm argues Guadiana is not an adequate class representative because she has dropped her claims for bad faith and punitive damages. Some courts have found that representation is not adequate where the class representative disclaims certain causes of action sometimes in a less than transparent attempt to salvage a class action where the differences between class members is apparent. *See, e.g., Western States Wholesale, Inc. v. Synthetic Industries, Inc.*, 206 F.R.D. 271, 277 (C.D.Cal. 2002); *Martin v. Home Depot U.S.A., Inc.*, 225

F.R.D. 198, 203 (W.D.Tex. 2004). Here, however, the claims for bad faith and punitive damages are not central to the main class issue of tear-out coverage. Moreover, as State Farm points out in its motion for summary judgment (filed after this motion), there is little evidence to support those claims. Accordingly, there is reason to believe Guadiana's decision to drop bad faith and punitive damages does no harm to the majority of class members. Moreover, those who wish to pursue these claims will be able to do so on their own provided they are informed of their rights and given a chance to opt out of the class action (as they must be under Rule 23(b)(3)). Finally, the decision to drop the bad faith and punitive damage claims eliminates certain legal problems because the law of bad faith is not uniform throughout the United States. State Farm makes this precise point in its brief. (Defendant's response.) Guadiana's decision to disclaim bad faith and punitive damages does not make her representation of the class inadequate. *See, e.g., Murray v. GMAC Mortg. Corp.*, 434 F.3d 948, 953 (7th Cir. 2006) ("Unless a district court finds that personal injuries are large in relation to statutory damages, a representative plaintiff must be allowed to forego claims for compensatory damages in order to achieve class certification.").

State Farm further argues Guadiana's representation would be inadequate because she is an employee of local counsel, Joseph Watkins. Some courts have found that a relationship between the plaintiff and class counsel can render plaintiff's representation inadequate because such a plaintiff might suffer from a conflict of interest. For example, if the plaintiff will share in some way in the counsel's fees, she might put the interests of the attorney before the interest of the class members. *See Shroder v. Suburban Coastal Corp.*, 729 F.2d 1371, 1375 (11th Cir. 1984); *Lyon v. Arizona*, 80 F.R.D. 665, 667 (D. Ariz. 1978).

In this case, although Guadiana is an employee of one of the class counsels, there is no evidence that she has a financial interest in her employer's compensation. In her deposition, Guadiana specifically testified that she will receive no compensation or bonus in connection with her employer's success in prosecuting this case. (Plaintiff's reply, Exhibit B, p. 103.) Accordingly, there is no evidence of a conflict of interest that would preclude her from functioning as an adequate class representative. *See, e.g., Irvin E. Schermer Trust by Kline v.*

1  *Sun Equities Corp.*, 116 F.R.D. 332, 338 (D.Minn. 1987). Guadiana will fairly and adequately
2  protect the interests of the class.

3  State Farm further argues Guadiana is not an adequate class representative because she
4  is no longer a State Farm insured and will not adequately represent the class's interest in
5  ensuring State Farm treats PB claims properly in the future. This objection stems from
6  language in Guadiana's prayer for relief in which she asks for "injunctive relief pursuant to
7  federal and state law requiring Defendant to stop its practice of underpaying claims involving
8  the replacement of PB piping systems." (Amended complaint, pp. 10-11.) State Farm correctly
9  observes that Guadiana's interest in State Farm's future behavior may be influenced by the fact
10 that she no longer carries State Farm insurance. At the motion hearing, Guadiana announced
11 her intention to abandon this demand for relief (at least where the class is certified pursuant to
12 Rule 23(b)(3)) so this issue is moot. (R.T., p. 20.); (see below).

14 <u>FED.R.CIV.P. 23(b)</u>

15 Guadiana moves for class certification under Rule 23(b)(2) and Rule 23(b)(3). Under
16 Rule 23(b)(2), a class action may be maintained if "the party opposing the class has acted or
17 refused to act on grounds that apply generally to the class, so that final injunctive relief or
18 corresponding declaratory relief is appropriate respecting the class as a whole . . . ."
19 FED.R.CIV.P. "[I]n order to permit certification under this rule, the claim for monetary damages
20 must be secondary to the primary claim for injunctive or declaratory relief." *Molski v. Gleich*,
21 318 F.3d 937, 947 (9th Cir. 2003).

22 Guadiana argues this action qualifies under section (b)(2) because State Farm has acted
23 to deny tear-out claims in accordance with its erroneous construction of the policy language in
24 a manner generally applicable to the class as a whole. Further, she seeks injunctive relief to
25 properly inform members of the class of their rights to tear-out coverage. The court does not
26 agree.

27 This suit is about damages. Guadiana seeks tear-out coverage she believes was
28 improperly denied her by the defendant. Guadiana seeks injunctive relief, not as an end in

1 itself, but only because it facilitates the class of insureds in their quest for damages. This action
2 cannot be certified under section (b)(2). *See also Kanter v. Warner-Lambert Co.,* 265 F.3d 853,
3 860 (9th Cir. 2001); *Packard v. Provident Nat. Bank*, 994 F.2d 1039, 1050 (3rd Cir. 1993) ("[A]
4 plaintiff may not turn what is essentially a legal claim into an equitable one merely by
5 demanding an injunction requiring the payment of money."), *cert. Denied*, 510 U.S. 964 (1993).

At the hearing, Guadiana's counsel argued the court could certify a section (b)(2) class to allow for a jury determination that PB pipes have to be replaced "only in some instances." (R.T. p 29.) If that happened, Guadiana would ask for an injunction directing State Farm to give its insureds notice that some PB systems need to be replaced and homeowners with these systems could claim tear-out costs.

This theory of the case, however, was not raised in Guadiana's amended complaint. Accordingly, it cannot form the basis for class certification. The court also notes that Guadiana has presented no expert testimony to support this theory. *See* [docs. ## 77, 78] Accordingly, it would be futile to amend the complaint to include it now.

In the alternative, Guadiana moves for certification pursuant to Rule 23(b)(3). An action may be certified pursuant to Rule 23(b)(3) if "the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Fed.R.Civ.P. 23(b)(3).

In this case, there are issues common to all members of the class. Factual questions in common include the following: (1) Do the PB pipes constitute a "system" that caused the covered loss, and (2) is it necessary to replace all the PB piping in order to repair that system? These questions form the basis for the breach of contract action and are common to all members of the class.

State Farm argues these are individual issues because each claimant must show her PB pipes constitute a single system that must be replaced in its entirety whenever there is a leak. State Farm maintains PB pipes can be repaired depending on circumstance such as the source of the leak or the quality of the water. State Farm, however, fails to grasp the gravamen of the

- 12 -

1 plaintiff's claim. Guadiana asserts PB pipes and their fittings *always* constitute a complete
2 system that *never* can be repaired short of complete replacement. Assuming she can prove this
3 at trial, these are not individual issues.

4 Of course, there are some questions that affect only individual class members: The
5 amount of damages will be unique to each class member. In addition, each class member will
6 have to qualify for inclusion in the class by proving he or she had homeowner coverage with
7 the defendant, suffered a covered loss, had PB piping, replaced the PB piping, and did not
8 receive tear-out payment for replacing the pipes that were not leaking. These individual issues,
9 however, should not be particularly difficult to resolve, and they do not predominate over the
10 factual issues in common.

11 State Farm further argues that this action should not proceed as a class because of the
12 difficulties inherent in maintaining a nationwide class action based on diversity. The court finds
13 this argument is well taken.

14 In a diversity action, the court must apply the choice of law rules of the forum state. *See*
15 *Klaxon Co. v. Stentor Electric Mfg. Co.*, 313 U.S. 487, 496, 61 S.Ct. 1020, 1021-22, 85 L.Ed.
16 1477 (1941). State Farm asserts (and Guadiana does not dispute) that under Arizona's choice
17 of law rule the court must apply the substantive law of each homeowner's state. Because this
18 is a nationwide class action, it appears at first blush that this the court must apply the substantive
19 law of all fifty states. If this were true, it would preclude a finding that common questions of
20 law and fact predominate in this action. *See Zinser*, 253 F.3d at 1190.

21 Guadiana, on the other hand, argues there are no meaningful differences in the law, and
22 the court may apply Arizona law to all claimants. Guadiana, however, has not discharged her
23 burden to prove this point. In her brief, Guadiana points to cases holding that contract law is
24 essentially the same in all jurisdictions. In other words, "a breach is a breach is a breach."
25 (Plaintiff's reply, p. 13) (citing *Klay v. Humana, Inc.*, 382 F.3d 1241, 1262-63 (11th Cir. 2004).
26 In this case, however, the predominant issue is not "breach" so much as "contract
27 interpretation."

28

- 13 -

Guadiana has not shown that the law of contract interpretation across the country is so similar that this court may apply Arizona law to all claimants. *See Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 816, 105 S.Ct. 2965, 2977 (1985) ("We must first determine whether Kansas law conflicts in any material way with another law which could apply."). Accordingly, the court cannot conclude that common issues of law and fact predominate in this action. *See Zinser*, 253 F.3d at 1190; *Lozano v. AT & T Wireless Services, Inc.*, 504 F.3d 718, 728 (9th Cir. 2007) (Class would not be certified where the plaintiff did not perform a nationwide analysis of the law of contract unconscionability.); *but see also Kleiner v. First Nat. Bank of Atlanta*, 97 F.R.D. 683, 695 n. 13 (N.D.Ga. 1983) (Class was certified where the court found no material differences in the laws of contract interpretation in Georgia, Tennessee, North Carolina, South Carolina, and Virginia).

State Farm identifies other issues that may differ between the various jurisdictions. The statute of limitations may differ, and the point at which a claim accrues may differ as well. Guadiana has not discharged her burden to show these differences, if any, can be accommodated. *See Marino v. Home Depot U.S.A., Inc.*, 245 F.R.D. 729, 735 (S.D.Fla. 2007) (Class would not be certified, in part, because "the fifty states have different statutes of limitations for breach of contract actions. . . .").

State Farm further argues the various jurisdictions may vary as to their treatment of the collateral source rule. State Farm notes that some homeowners may have already received compensation from the *Cox* PB settlement fund to repipe their homes. (Defendant's response, pp. 23, 38-40.) If so, that payment may affect the damages calculation in this action depending on each jurisdiction's collateral source rule. In her reply brief, Guadiana agrees that those homeowners who recovered compensation from that fund should be excluded from the class. (Plaintiff's reply, p. 17.) This issue is therefore moot.

In deciding whether "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy" the court must consider four factors:

> (A) the class members' interests in individually controlling the prosecution or defense of separate actions;

> (B) the extent and nature of any litigation concerning the controversy already begun by or against class members;
>
> (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and
>
> (D) the likely difficulties in managing a class action.

FED.R.CIV.P. 23(b)(3); *Zinser v. Accufix Research Institute, Inc.*, 253 F.3d 1180, 1190 (9th Cir 2001).

Here, the damages for each class member is likely to be relatively small[3] in relation to the costs of litigation. Accordingly, it is unlikely that the individual members would be able to pursue litigation by themselves. This factor favors proceeding via a class action. *See Zinser*, 253 F.3d at 1190-91. ("We recognize that a party with a claim of $50,000 might have a difficult time alone pursuing a complex products liability case.")

Factor (B) weighs against class action treatment if there are other actions pending that cover the same subject matter. *Zinser*, 253 F.3d at 1191. There is no indication from either party that any similar action is pending.

The third factor, (C), considers the desirability of concentrating the litigation of the claims in the particular forum. Here, concentrating the litigation in a single forum conserves judicial resources and reduces the need for costly expert testimony.

Factor (D) considers "the likely difficulties in managing a class action." Here, the "likely difficulties" depend in large part on the choice of law issue and the statute of limitation issue. A class action cannot be the best way for adjudicating this dispute without a showing that these issues can be accommodated.

RECOMMENDATION:

The Magistrate Judge recommends the District Court, after its independent review of the record, enter an order

---

[3] Guadiana's tear-out costs "were less than $600." (R.T. p. 19.)

Denying the plaintiff's motion for class certification pursuant to Rule 23, FED.R.CIV.P. [doc. #58].

Pursuant to 28 U.S.C. §636 (b), any party may serve and file written objections within 10 days of being served with a copy of this Report and Recommendation. If objections are not timely filed, they may be deemed waived.

The Clerk is directed to send a copy of this Report and Recommendation to the parties or their counsel.

DATED this 18th day of December, 2009.

_____
Glenda E. Edmonds
United States Magistrate Judge