**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Rosemary Guadiana, | No. CIV 07-326 TUC FRZ (GEE) |
| Plaintiff, | **REPORT AND RECOMMENDATION** |
| vs. | |
| State Farm Fire and Casualty Company, | |
| Defendant. | |

Pending before the court is the plaintiff's second motion for class certification pursuant to Rule 23, FED.R.CIV.P. (Doc. 121)

The plaintiff, Rosemary Guadiana, claims the defendant breached her homeowner's insurance policy by failing to pay the costs of tearing out and replacing part of the structure when she replaced her polybutylene plumbing. She moves that this court certify her suit as an Arizona class action pursuant to FED.R.CIV.P. 23(b)(3).

The case has been referred to Magistrate Judge Edmonds for all pretrial matters pursuant to Local Civil Rule 72.2. Rules of Practice of the U.S. District Court for the District of Arizona.

A hearing on the motion was held on Tuesday, November 30, 2010. The motion should be granted. Guadiana's proposed Arizona class satisfies the requirements of FED.R.CIV.P. 23(b)(3).

FACTUAL AND PROCEDURAL BACKGROUND

Guadiana had a homeowner's insurance policy with the defendant, State Farm. (Amended complaint, p. 3.) On September 9, 2004, her home sustained water damage when the plumbing leaked. *Id.* Guadiana discovered her home plumbing system was constructed with polybutylene (PB) pipe. *Id.*

PB pipe is no longer used for home plumbing systems because chlorine in the water causes the pipe to become brittle and crack. *Id.* This pipe embrittlement cannot be remedied. *Id.* Guadiana maintains the only feasible method of repairing a plumbing system constructed of PB pipe is to replace all the pipe. *Id.*

Guadiana claims State Farm is obliged, under her homeowner's policy, to pay the costs incurred in tearing out and replacing that part of the structure necessary to replace her entire PB piping system. *Id.*, p. 4. State Farm believes it is only obligated to pay the costs necessary to access the portion of the pipe that was leaking. *Id.*

On July 11, 2007, Guadiana filed the instant class action in U.S. District Court. She claims State Farm's failure to pay the entire tear-out cost is a breach of her homeowner's insurance policy. (Amended complaint.)

On September 14, 2007, State Farm filed a motion to dismiss for failure to state a claim upon which relief can be granted pursuant to Rule 12(b)(6). FED.R.CIV.P. This court denied the motion on September 2, 2008. The court construed the tear-out provision applying Arizona law, and assessed Guadiana's claim as follows: "If Guadiana can establish as a matter of fact that the system that caused the covered loss includes all the pipes in her house and it was necessary to replace all the pipes to repair that system, State Farm is obligated to pay the tear-out costs necessary to replace all the pipes, even those not leaking." (Doc. 29); (Doc. 25, p. 4]

On July 7, 2009, Guadiana moved that this court certify a nationwide class pursuant to FED.R.CIV.P. 23(b)(2) and (b)(3). (Doc. 58) The court denied her motion because she failed to show that the law of contract interpretation across the country is so uniform that this court could apply Arizona law to all claimants. (Doc. 101); (Doc. 109)

On June 15, 2010, Guadiana filed the instant motion to certify a class pursuant to FED.R.CIV.P. 23(b)(3) limited to persons owning property in Arizona. Her proposed class is defined as follows:

> All current or former insureds of State Farm Fire and Casualty Co. who:
>
> (1) own or owned real property located in the state of Arizona which was insured by Defendant;
>
> (2) experienced a leak in a PB System (defined as a plumbing system which included polybutylene pipe) within the Arizona insured property, which leak was acknowledged by Defendant to result in a covered loss;
>
> (3) incurred costs (or expended labor) for tearing out and/or replacing polybutylene pipe and associated fittings within the PB System; and
>
> (4) during the Class Period were paid an amount (or were not paid at all) that failed to include the costs or expended labor associated with replacing the polybutylene pipe and fittings within the PB System.
>
> The Class Period is July 11, 2003 through the date class certification is granted and the class certification order becomes final.
>
> Excluded from the Class are Defendant, any entity in which Defendant has a controlling interest, any employees, officers, directors of Defendant, and any legal representatives, heirs, successors, and assignees of Defendant, and any judge assigned to hear this action.

(Plaintiff's motion, pp. 3-4.)  The defendant filed a response opposing the motion, and the plaintiff filed a reply. A hearing on the motion was held before Magistrate Judge Glenda Edmonds on Tuesday, November 30, 2010.

Standard of Review

"As the party seeking class certification, [Guadiana] bears the burden of demonstrating that she has met each of the four requirements of Rule 23(a) and at least one of the requirements of Rule 23(b)."  *Zinser v. Accufix Research Institute, Inc.*, 253 F.3d 1180, 1186 (9th Cir. 2001), *amended,* 273 F.3d 1266 (9th Cir. 2001). The four preliminary requirements are as follows: (1) numerosity, (2) commonality, (3) typicality, and (4) adequacy of representation. FED.R.CIV.P. 23(a).

1   A class may be certified pursuant to Rule 23(b)(3) if "the court finds that the questions 2 of law or fact common to class members predominate over any questions affecting only 3 individual members, and that a class action is superior to other available methods for fairly and 4 efficiently adjudicating the controversy." FED.R.CIV.P.

5   "Before certifying a class, the trial court must conduct a 'rigorous analysis' to determine 6 whether the party seeking certification has met the prerequisites of Rule 23." *Zinser*, 253 F.3d 7 at 1186. "While the trial court has broad discretion to certify a class, its discretion must be 8 exercised within the framework of Rule 23." *Id*. "[I]n some cases, the pleadings will be 9 sufficient to render the certification decision, and in others, the district court must make 10 determination on facts overlapping with the merits." *Dukes v. Wal-Mart Stores, Inc.*, 603 F.3d 11 571, 587 (9th Cir. 2010) (*cert. granted in part by Wal-Mart Stores, Inc. v. Dukes*, __S.Ct.__; 79 12 USLW 3128 (Dec. 6, 2010)).

14   Numerosity

15   A proposed class action satisfies the numerosity prerequisite if "the class is so numerous 16 that joinder of all members is impracticable." FED.R.CIV.P. 23(a)(1). "Generally, 40 or more 17 members will satisfy the numerosity requirement." *Perez v. First American Title Ins. Co.*, 2009 18 WL 2486003, *2 (D.Ariz. 2009). "The party seeking class certification need not identify the 19 precise number of potential class members." *Id*. However, "rank speculation untethered to real 20 facts" will not do. *National Federation of Blind v. Target Corp.*, 582 F.Supp.2d 1185, 1200 21 (N.D.Cal. 2007).

22   Guadiana estimates the class will number approximately 300. She makes her estimation 23 based on a search that the defendant performed for claim files that described water leaks and 24 mentioned polybutylene. (Plaintiff's motion, p. 15.) State Farm identified 4,756 claim files 25 during the search. *Id*. Seven hundred of those files were produced by State Farm for 26 examination, and 118 of those files were from Arizona. *Id*. Guadiana makes a preliminary 27 estimate that 800 of the original claim files identify potential class members (4,756 x 118/ 700). 28   Guadiana makes further reductions to compensate for the probability that some of the

- 4 -

1  claim files might not involve a leak in a polybutylene piping system[1] (20%); some homeowners
2  might not have replaced the PB piping system[2] (40%); and some homeowners might have had
3  their pipes replaced under the *Cox* Settlement[3] (approximately 111 claims were paid to State
4  Farm's insureds).  In conclusion, Guadiana estimates the size of the class to be approximately
5  274  (4,756 x (118/700) x 80% x 60% - 111).

6       Guadiana's calculation is not exact, but it is a reasonable estimate of the likely size of
7  the class.  The plaintiff's class "is so numerous that joinder of all members is impracticable."
8  FED.R.CIV.P. 23(a)(1).  The numerosity prerequisite is satisfied.

9       State Farm asserts the size of the class is likely much smaller.  (Response, pp. 5-9.)
10 According to State Farm, of the 4,767 claim files that may involve a PB plumbing leak, 696 are
11 Arizona claims.  *Id*., p. 5.  Of the 118 Arizona claim files disclosed to Guadiana, State farm
12 identifies only 3 that qualify for inclusion Guadiana's class.  *Id*., p. 7.  State Farm therefore
13 calculates that the size of the class is likely to be only 18 (696 x 3 / 118), too small to satisfy the
14 numerosity prerequisite.  *Id*., p. 12.  The court believes State Farm's methodology
15 underestimates the likely size of the class.

16      State Farm counts as potential class members only those claim files that explicitly state
17 that the insured had a PB leak, performed a re-plumb, and did not apply for compensation from
18 the *Cox* settlement fund.  State Farm provides no explanation for its assumption that every
19 homeowner who had a re-plumb would inform State Farm of that fact.  The re-plumb itself was
20 not covered by insurance.  Moreover, State Farm's position was (and still is) that the tear-out

---

22  [1] Three of the 118 claim files did not involve a leaking PB plumbing system (2.5%).
23  (Plaintiff's motion, p. 15.) To be "conservative," Guadiana assumes 20% of the files will not involve a leaking PB plumbing system. *Id*.

24  [2] Deponent, Michael McInnis, "testified that 30-40 percent of people with leaking PB-pipe
25  systems cannot afford to re-pipe their homes and instead just patch the leak." *Id*., p. 16.

26  [3] In the case, *Cox v. Shell Oil Co.*, 1995 WL 775363 (Tenn. Ch. Nov. 17, 1995), a settlement
    was reached awarding $950 million dollars to homeowners with PB piping. Guadiana estimates that
27  556 *Cox* settlement payments were made to Arizona claimants during the class period. *Id*. She further
    estimates that 111 of these went to State Farm insureds because State Farm has a 20% market share of
28  insured property. *Id*.

- 5 -

provision did not apply to a re-plumb either. Accordingly, it is unlikely that the fact of a re-plumb would always be reported to State Farm and included in the claim file.

Contrary to State Farm's implicit assertion, Guadiana is not required to identify all of the class members based solely on the information in State Farm's claim files. It is sufficient that she has made a reasonable estimate of the number of persons who qualify for class membership.

State Farm disputes Guadiana's estimation that 60 percent of homeowners with a PB leak will re-plumb their homes. This figure is based on the testimony of Michael McInnis, who performed the re-plumb. (Defendant's response, p. 43.) McInnis testified that 30-40 percent of people cannot afford to re-plumb and simply patch the leaking section of pipe. (Plaintiff's motion, p. 16.)

State Farm argues that McInnis' estimation of the number of homeowners who performed a re-plumb rather than a patch is unreliable because McInnis made more money performing a re-plumb than a patch and therefore had a financial interest in increasing the number of re-plumbs. This conflict of interest, however, does not support State Farm's argument that McInnis' estimation of the number of re-plumbs is incorrect. Assuming McInnis had a financial interest in performing re-plumbs, it is likely that other plumbers had the very same interest and encouraged their customers to perform re-plumbs as well. It may be that this financial conflict of interest unfairly increased the number of re-plumbs, but nothing about this conflict would cause McInnis to artificially inflate his estimate of the number of re-plumbs actually performed. He would not make any more money by falsely inflating this figure at his deposition.

State Farm also objects to Guadiana's estimation that 20 percent of re-plumbs were covered by the *Cox* settlement fund. State Farm argues Guadiana's estimate is "speculative" and based on unreliable assumptions. State Farm argues the percentage is more likely 57 percent because an examination of the files shows that four of the seven files that report a re-plumb also report that the homeowner was applying for *Cox* settlement money. State Farm asserts "[t]he claim files thus indicate a *potential* recovery rate of over 50 percent. . . ."

(Response, p. 19) (emphasis added).  The court is not convinced that State Farm's calculation is more reliable than Guadiana's.

As the court noted above, because re-plumb costs are not covered by State Farm's homeowner's insurance policy, it is by no means certain that the claim file will faithfully record whether or not a re-plumb was performed, let alone whether the costs of the re-plumb were covered by the *Cox* fund.  Moreover, State Farm's calculation fails to account for the fact that not all applications to the *Cox* fund were approved for payment.  Guadiana reports that the *Cox* settlement fund approved for payment only about half of the applications that it received from Arizona claimants.   (Plaintiff's motion, p. 16.)

### The Class

State Farm further argues that Guadiana's class is not administratively feasible or ascertainable because of the unique characteristics of each leak.  For example, the leak could have occurred in a non-pipe component that is not polybutylene such as a faucet or toilet.  Alternatively, State Farm argues that even if the PB pipe itself was leaking, the leak could have been caused by mechanical damage rather than by chemical deterioration.  State Farm argues these issues must be addressed individually and not via a class action.  The court does not agree.

At this point, the court need only decide if the proposed class is sufficiently definite for the class members to be identified unambiguously.  *Parkinson v. Hyundai Motor America*, 258 F.R.D. 580, 593 (C.D.Cal. 2008).  The members of the class should be identifiable by reference to objective criteria.  *Id*.  Each individual class member need not be identifiable at the class certification stage, however, provided she can be identified when judgment is rendered.  *In re Methyl Tertiary Butyl Ether (MTBE) Products Liability Litigation*, 241 F.R.D. 185, 196 (S.D.N.Y. 2007).

In this case, the class is comprised of persons who had a covered leak in a PB plumbing system and then replaced that system.  The members of the class are identified by reference to objective criteria.  Accordingly, the class is sufficiently definite for certification.

1    State Farm is correct in its observation that all aspects of the class are not definite at this 2 time, but the extent of the class will be established by the time judgment is rendered. For 3 example, at trial Guadiana will have to establish the existence and extent of the PB plumbing 4 system. The confines of this system will be determined by the class description. If a component 5 cannot be repaired without complete replacement, then the component is a part of the PB 6 plumbing system. To be a member of the class, the person must have a leak in the PB plumbing 7 system. If the leak is elsewhere, there is no class membership. If, for example, it is proven at 8 trial that a toilet *can* be repaired without replacing the entire PB plumbing system, then the toilet 9 is not part of the system and a leaking toilet does *not* qualify for class membership. Once the 10 extent of the PB plumbing system is established, it should be relatively easy to determine which 11 leaks qualify for class membership and which do not.

12    Similarly, Guadiana must establish at trial when a PB system must be replaced, not 13 repaired. If she can prove that PB systems can *never* be repaired, then it does not matter why 14 the pipe burst. Even a leak caused by mechanical damage would then qualify for class 15 membership.

16

17    <u>Motion to Strike the Declaration of Kathryn Kersh</u>

18    State Farm further moves that the court strike the declaration of Kathryn Kersh. Kersh 19 is a paralegal working under the supervision of Guadiana's attorneys. She examined the claim 20 files produced by State Farm and prepared a report describing her findings. (Doc. 118) She 21 also attached to her declaration information about PB pipe and the *Cox* Settlement that she 22 gathered from various sources.

23    State Farm argues Kersh's affidavit must be stricken because she was not disclosed as 24 a potential witness violating Fed.R.Civ.P 26(a)(2)(A) and 37(c)(1). State Farm further argues 25 her testimony violates Fed.R.Evid. 701 and relies impermissibly on hearsay.

26    There is, however, no general requirement that an affiant be available to testify at trial 27 or be disclosed as a witness. *Federal Deposit Ins. Corp. v. Horn*, 751 F.Supp. 186, n. 1 28 (D.Colo. 1990). Furthermore, because a motion to certify a class is a preliminary procedure,

1 courts do not require strict adherence to the Federal Rules of Civil Procedure or the Federal
2 Rules of Evidence. *See Eisen v. Carlisle and Jacquelin*, 417 U.S. 156, 178 (1974) (The class
3 certification procedure "is not accompanied by the traditional rules and procedures applicable
4 to civil trials."); *Paxton v. Union Nat. Bank*, 688 F.2d 552, 562 n. 14 (8th Cir. 1982) ("Hearsay
5 testimony may be admitted to demonstrate typicality."). Assuming without deciding that the
6 Kersh declaration violates either the Federal Rules of Civil Procedure or the Federal Rules of
7 Evidence, that fact alone does not justify striking the declaration.

<u>Motion to Strike Denny Henderson's Expert Report</u>

State Farm also moves that this court strike the reports produced by Guadiana's expert, Denny Henderson. Guadiana maintains that once a PB piping system begins to leak, it can only be properly repaired by replacing all the PB pipe. She intends to prove this point by relying in part on the testimony of her expert witness, Denny Henderson. The gist of his testimony is summarized in his expert reports. State Farm moves that this court strike Henderson's reports for the purposes of the class certification motion because they lack a "scientifically reliable basis" and therefore may not be admitted pursuant to Fed.R.Civ.P. 702. (Defendant's response, p. 43.)

It is by no means clear that a challenge to an expert witness' qualifications should be brought and decided at the class certification stage. The Ninth Circuit has permitted District Courts to do so in certain situations but has not explicitly approved the practice. *See Dukes v. Wal-Mart Stores, Inc.*, 603 F.3d 571, 603 n. 22 (9th Cir. 2010) ("We are not convinced by the dissent's argument that *Daubert* has exactly the same application at the class certification stge as it does to expert testimony relevant at trial."). Nevertheless, assuming the motion is ripe, the court concludes that State Farm's objection to the admissibility of Henderson's reports should be denied.

"Rule 702 states that if scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion." *Fortune*

- 9 -

*Dynamic, Inc. v. Victoria's Secret Stores Brand Management, Inc.*, 618 F.3d 1025, 1035 (9th Cir. 2010) (internal punctuation removed) (quoting FED.R.EVID. 702). "Rule 702 imposes a basic gatekeeping obligation on district courts to ensure that any and all scientific testimony – including testimony based on technical or other specialized knowledge – is not only relevant, but reliable." *Id.* (internal punctuation removed) (quoting *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 147 (1999)). "The district court must ensure that expert testimony, whether it is based on professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Id.* (quoting *Kumho Tire Co.*, 526 U.S. at 152).

State Farm argues Henderson's expert opinions are not reliable because they are not supported by a scientific basis. Henderson, however, is not offering *scientific* expert testimony. He is offering expert testimony grounded in his experience and observations.

> The distinction between scientific and non-scientific expert testimony is a critical one. By way of illustration, if one wanted to explain to a jury how a bumblebee is able to fly, an aeronautical engineer might be a helpful witness. Since flight principles have some universality, the expert could apply general principles to the case of the bumblebee. Conceivably, even if he had never seen a bumblebee, he still would be qualified to testify, as long as he was familiar with its component parts.
> On the other hand, if one wanted to prove that bumblebees always take off into the wind, a beekeeper with no scientific training at all would be an acceptable expert witness if a proper foundation were laid for his conclusions. The foundation would not relate to his formal training, but to his firsthand observations. In other words, the beekeeper does not know any more about flight principles than the jurors, but he has seen a lot more bumblebees than they have.

*Berry v. City of Detroit*, 25 F.3d 1342, 1349 -1350 (6th Cir.1994).

In this case, Henderson opines that a leaking PB piping system must be replaced in its entirety because the pipe fails at an unacceptable rate and is now considered in the plumbing industry to be inappropriate for home plumbing systems. He reaches this conclusion based on his experience in the relevant field, not on his understanding of the chemical reaction that causes the pipe to crack. This is a permissible basis for expert testimony pursuant to Rule 702. It does not matter if Henderson is unable to identify the precise chemical process by which PB pipe becomes brittle. It is sufficient that he knows, based on his experience and observations, that the material does become brittle. *See Wellman v. Norfolk and Western Ry. Co.*, 98 F.Supp.2d

1  919, 925 (S.D.Ohio 2000) (Proffered expert witness was not a scientist nor an engineer but had sufficient experience in the railroad industry to offer testimony as to the "proper and safe maintenance of a railroad yard with respect to debris dropped from loaded cars.").

Commonality, Typicality, Adequacy, and Rule 23(b)(3)

The court further concludes Guadiana's proposed Arizona class satisfies the commonality, typicality, and adequacy prongs of Rule 23(a). The court considered these issues in its previous report and finds no reason to alter its original analysis. (Doc. 101)

The court further concludes Guadiana's proposed Arizona class qualifies under Rule 23(b)(3). *See* (Doc. 101) Now that the problem of identifying and accommodating the contract law of each state has been eliminated, "the questions of law or fact common to class members predominate over any questions affecting only individual members," and "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." FED.R.CIV.P. 23(b)(3); (Doc. 101)

RECOMMENDATION:

The Magistrate Judge recommends the District Court, after its independent review of the record, enter an order

GRANTING the plaintiff's motion for class certification pursuant to Rule 23, FED.R.CIV.P. (Doc. 121) It is recommended that the District Court approve an Arizona class that reads in pertinent part as follows:

> All current or former insureds of State Farm Fire and Casualty Co. who:
>
> (1) own or owned real property located in Arizona which was insured by Defendant;
>
> (2) experienced a leak in a PB System (defined as a plumbing system which included polybutylene pipe) within the insured property, which leak was acknowledged by Defendant to result in a covered loss;

      (3) incurred costs (or expended labor) for tearing out and/or replacing part of the insured property necessary to replace the polybutylene pipe and fittings within the system; and

      (4) during the Class Period were paid an amount (or were not paid at all) that failed to include the full cost of tearing out and replacing parts of the building necessary to replace the polybutylene pipe and fittings within the system.

This is the class proposed by the court in its first report with the modification suggested by Guadiana and with the scope of the class limited to Arizona. (Doc. 101, pp. 6-7)

    In the instant motion, Guadiana modified the language of her proposed class in a way that could be interpreted to extend State Farm's liability to the cost of the re-plumb itself rather than just the tear-out costs. *See* (Defendant's response, p. 11, n. 39.) Because Guadiana asserts she did not intend to change her class substantively, the court recommends the District Court approve the original wording of the class.

    It is further recommended that the District Court DENY State Farm's motion to strike the declaration of Kathryn Kersh and DENY State Farm's motion to strike the reports of Denny Henderson, which were included within its response brief.

    Pursuant to 28 U.S.C. §636 (b), any party may serve and file written objections within 14 days of being served with a copy of this Report and Recommendation. If objections are not timely filed, they may be deemed waived.

    The Clerk is directed to send a copy of this Report and Recommendation to the parties or their counsel.

    DATED this 7th day of December, 2010.

_____
Glenda E. Edmonds
United States Magistrate Judge