**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Rosemary Guadiana,<br><br>   Plaintiff,<br><br>vs.<br><br>State Farm Fire and Casualty Company,<br><br>   Defendant. | No. CIV 07-326 TUC FRZ (GEE)<br><br>**REPORT AND RECOMMENDATION** |

Pending before the court is the plaintiff's motion for summary judgment pursuant to Rule 56, FED.R.CIV.P. (Doc. 176)

The plaintiff, Rosemary Guadiana, claims the defendant breached her homeowner's insurance policy by failing to pay the costs of tearing out and replacing part of the structure when she replaced her polybutylene plumbing. Guadiana moves that this court grant partial summary judgment in her favor pursuant to Fed. R. Civ. P. 56. Specifically, she asks that the court issue a ruling on the construction of the insurance contract.

The case has been referred to Magistrate Judge Edmonds for all pretrial matters pursuant to Local Civil Rule 72.2. Rules of Practice of the U.S. District Court for the District of Arizona.

The court finds the motion suitable for decision without a hearing. The issues presented are not new. They were previously raised in State Farm's motion to dismiss and motion for summary judgment. The motion should be granted in part.

FACTUAL AND PROCEDURAL BACKGROUND

On September 9, 2004, Guadiana's home sustained water damage when the plumbing leaked. (Doc. 177, ¶ 1) She subsequently discovered her plumbing was constructed out of polybutylene (PB) pipes and was informed this type of system cannot be repaired piecemeal – it must be completely replaced. (Doc. 176, p. 3) Accordingly, Guadiana replaced all of the pipes. *Id.* Guadiana's homeowner's insurance policy contains the following "tear-out" provision:

> We do not insure for any loss . . . which consists of, or is directly and immediately caused by . . .
>
> \* \* \*
>
> f. continuous or repeated seepage or leakage of water or steam from a:
>
> (1) heating, air conditioning or automatic fire protective sprinkler system;
>
> (2) household appliance; or
>
> (3) plumbing system, including from, within or around any shower stall, shower bath, tub installation, or other plumbing fixture, including their walls, ceilings or floors;
>
> which occurs over a period of time. *If loss to covered property is caused by water or steam not otherwise excluded, we will cover the cost of tearing out and replacing any part of the building necessary to repair the system or appliance.* We do not cover loss to the system or appliance from which the water or steam escaped . . .

(Doc. 177, ¶ 5) (emphasis added).

Guadiana submitted a claim to her insurer, State Farm, seeking reimbursement for the water damage and for the "tear-out" costs associated with tearing out and replacing that portion of the structure necessary to replace her entire plumbing system. *Id.*, ¶¶ 2, 3.

State Farm took the position that her water damage was covered by the policy, but the tear-out provision did not cover the cost of accessing and replacing those pipes that were not leaking. (Doc. 179, p. 3); (Doc. 177, ¶ 4)

On July 11, 2007, Guadiana filed this class action in U.S. District Court. She claims State Farm's failure to pay her entire tear-out costs is a breach of contract and a breach of the duty of good faith.

- 2 -

On September 14, 2007, State Farm filed a motion to dismiss for failure to state a claim upon which relief can be granted pursuant to Rule 12(b)(6). FED.R.CIV.P. This court denied the motion on September 2, 2008. (Doc. 29) In construing the tear-out provision, the court concluded as follows: "If Guadiana can establish as a matter of fact that the system that caused the covered loss includes all the pipes in her house and it was necessary to replace all the pipes to repair that system, State Farm is obligated to pay the tear-out costs necessary to replace all the pipes, even those not leaking." (Doc. 25, pp. 4-5, 29) The court rejected State Farm's argument that the tear out provision did not apply to the non-leaking pipes either because they did not cause the covered loss or because the policy does not cover defective materials and therefore the pipes are not a covered loss themselves.

On July 31, 2009, State Farm filed a motion for summary judgment pursuant to Rule 56, FED.R.CIV.P. (Doc. 63) State Farm argued, among other things, that the tear-out provision did not apply to the non-leaking pipes because the tear-out provision only applied to "repair" not "replace" the system that caused the covered leak. State Farm argued again that the tear-out provision did not apply to the non-leaking pipes either because the policy does not cover defective materials and therefore the pipes are not a covered loss themselves. The court granted the defendant's motion for summary judgment on the issues of bad faith, punitive damages, and prospective injunctive relief. (Doc. 96, 109) The court denied the defendant's motion on Guadiana's breach of contract claim. *Id*.

On March 31, 2011, this court certified Guadiana's motion for class certification limited to Arizona plaintiffs. (Doc. 139, 145) Notice was distributed to the class on September 27, 2011. (Doc. 176, p. 4) The opt-out deadline, set for November 28, 2011, has passed. *Id*.

On December 7, 2011, Guadiana filed the instant motion for partial summary judgment. (Doc. 176) She moves that this court find as a matter of law that (1) the policy "covers tear-out costs necessary to adequately repair the plumbing system, even if an adequate repair requires replacing all or part of the system; and (2) there are no policy "exclusions that limit the coverage of the tear-out provision." (Doc. 176, p. 5); *see also Smith v. Califano*, 597 F.2d 152, 155 (9th

Cir. 1979) ("Because the case could thus be resolved as a matter of law, summary judgment was the proper procedural device."), *cert. Denied*, 444 U.S. 980 (1979).

Standard of Review:  Summary Judgment

Summary judgment is appropriate only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  There is a genuine issue of material fact "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The initial burden rests on the moving party to point out the absence of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  If the moving party has the burden of proof at trial, that party carries its initial burden by presenting evidence showing no reasonable trier of fact could find for the nonmoving party.  *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986); *United States v. Four Parcels of Real Property*, 941 F.2d 1428, 1438 (11th Cir. 1991).  If the moving party does not have the burden of proof at trial, that party carries its initial burden either by presenting evidence negating an essential element of the nonmoving party's claim or demonstrating the nonmoving party cannot meet its burden at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Nissan Fire & Marine Insurance v. Fritz*, 210 F.3d 1099, 1102 (9th Cir. 2000).

Once satisfied, the burden shifts to the opponent to demonstrate through production of probative evidence that an issue of fact remains to be tried.  *Celotex,* 477 U.S. at 324.  Summary judgment is appropriate "against a party who fails to make a showing sufficient to establish the existence of an element essential to the party's case, and on which that party will bear the burden of proof at trial." *Thomas v. Douglas*, 877 F.2d 1428, 1430 (9th Cir. 1989).

When considering a motion for summary judgment, the court is not to make credibility determinations or weigh conflicting evidence. *Musick v. Burke*, 913 F.2d 1390, 1394 (9th Cir. 1990).  Instead, the court should draw all inferences in the light most favorable to the nonmoving party. *Id.*

- 4 -

DISCUSSION

As the court previously observed, "An insurance policy is a contract between the insurer and its insured." *Liberty Ins. Underwriters, Inc. v. Weitz Co., LLC*, 215 Ariz. 80, 83, 158 P.3d 209, 212 (App. 2007). "Courts construe the written terms of insurance contracts to effectuate the parties' intent and to protect the reasonable expectations of the insured." *Id.* (internal punctuation omitted). "If the contractual language is clear, we will afford it its plain and ordinary meaning and apply it as written." *Id.*

Where the policy is "susceptible to different constructions," the court should begin by "examining the purpose of the clause in question, the public policy considerations involved and the transaction as a whole." *California Cas. Ins. Co. v. American Family Mut. Ins.*, 208 Ariz. 416, 418, 94 P.3d 616, 618 (App. 2004). If, after this inquiry, the court still finds ambiguity, the clause should be construed against the insurer. *Id.*

In this case, Guadiana suffered a covered loss when her pipes sprang a leak. (Doc 180, ¶ 2) This covered loss triggered the tear-out provision of the insurance contract under which State Farm is obligated to pay the tear-out costs "necessary to repair the system or appliance." (Doc. 177, ¶ 5) The system in this case is the plumbing system that caused the covered leak. If Guadiana can establish as a matter of fact that her plumbing system caused the covered loss and in order to repair that system it was necessary to replace all the PB pipes, State Farm is obligated to pay the tear-out costs necessary to replace all those pipes, even those not leaking. *See Schumacher v. Lumbermens Mut. Cas. Co.*, 154 So.2d 637, 639 (La.App. 1963) (Whether gutters and drainpipe were part of the plumbing system was an issue of fact.).

State Farm maintains it is only required to pay the tear-out costs necessary to replace the particular pipes that burst. It argues a more expansive interpretation of the tear-out provision runs counter to those sections of the policy that exclude coverage for loss consisting of defective construction materials. (Doc. 179, p. 14)

The policy states in a separate section that it does not cover loss due to "wear, tear, . . . deterioration, inherent vice, latent defect or mechanical breakdown." (Doc. 179, p. 14) (Doc. 62-1, p. 13) In another section, the policy states that "[w]e do not insure under any coverage

- 5 -

for any loss consisting of . . . defect, weakness, inadequacy, fault or unsoundness in . . . materials used in construction or repair." (Doc. 180, p. 4); (Doc. 62-1, pp. 14-15) These exclusions, State Farm argues, preclude the reimbursement of tear-out costs necessitated by defective materials used in the home construction. The court does not agree.

These provisions exclude any loss consisting of defective construction materials. Here, they preclude the homeowner from claiming that the defective pipe is a covered loss. Guadiana, however, is not making that claim. She is claiming the water damage is a covered loss and she is entitled to the tear-out costs necessary to repair the plumbing system that caused that covered loss. The water damage is the covered loss, not the defective plumbing system. *See, e.g., Keenan v. Wausau Lloyds Ins. Co.*, 1998 WL 652332, *3 (Tex.App 1998) (not designated for publication) ("[O]nce covered property is damaged by steam or water from one of the listed sources, the insured is covered for the cost of accessing the problem, without regard to the nature of the problem, which could include defective construction."); *but see, Murray v. State Farm Fire & Casualty Co.*, 219 Cal.App.3d 58, *65 (Cal.App.4.Dist.1990) ("Because there was no covered loss under the policy, paragraph 1(e) did not obligate State Farm to pay the cost of tearing out the cement slab in order to repair the damaged pipe.").

State Farm further argues that summary judgment is not appropriate because Guadiana cannot prove that her interpretation of the policy protects the reasonable expectations of the insured without submitting evidence of the expectations of each member of the class. State Farm, however, misconstrues Guadiana's argument.

Guadiana does not argue that her interpretation of the tear-out provision is correct based on her subjective expectations. She argues her interpretation is correct based on the policy language. Accordingly, it is not necessary for her to produce evidence of each class member's subjective expectations as a prerequisite to summary judgment. Put another way, the subjective expectations of each class member is not a genuine issue of material fact that must be resolved before ruling on her proposed construction of the policy. *But see Averett v. Farmers Insurance Co. Of Arizona*, 177 Ariz. 531, 869 P.2d 505 (1994) (Where the plaintiff offered testimony in support of his subjective expectations, summary judgment was not appropriate because there

1 remained issues of fact that needed to be resolved before the plaintiff's reasonable expectations
2 could be assessed.).

3 State Farm further argues that the tear-out provision does not apply because it only
4 applies to tear-out necessary to *repair* the system that caused the covered loss, not tear-out
5 necessary to *replace* the system.

6 The court agrees that the words repair and replace are not ordinarily synonymous.
7 Usually, a system can be repaired short of complete replacement. Nevertheless, Guadiana
8 intends to prove at trial that this is an unusual case where repair of her plumbing system requires
9 replacement of all the PB piping. The following question is thus presented: Where repair of a
10 piping system requires complete replacement, does the tear-out provision apply? The court will
11 begin by "examining the purpose of the clause in question, the public policy considerations
12 involved and the transaction as a whole." *See California Cas. Ins. Co.,* 208 Ariz. at 418, 94
13 P.3d at 618.

14 State Farm has previously asserted that the purpose of the tear-out provision is to
15 "facilitate repair of the leak in order to stop the influx of water that is causing the covered loss."
16 (Doc. 12, p. 10). This is a sensible goal that conserves money for both State Farm and its
17 insured. With this purpose in mind, the court concludes the tear-out provision should cover
18 those unusual cases where repair of a system requires total replacement.

19 There is no reason why a system that requires complete replacement should be treated
20 any differently than a system that can be repaired short of complete replacement. Both systems
21 need to be fixed in a timely and competent manner in order to limit the covered loss and prevent
22 losses in the future. The court concludes State Farm's construction of the tear-out provision
23 does not facilitate the purpose of the clause in question.

24 Moreover, State Farm's construction does not comport with considerations of public
25 policy. Guadiana intends to prove that the only way to repair her system was to replace all the
26 existing PB piping. While this relatively drastic method of repair is no doubt unusual, there
27 must be some occasions when replacement is the appropriate, standard, or most cost-effective
28 method for repairing a plumbing system. Nevertheless, under State Farm's construction of the

1 policy, tear-out costs would be paid if a plumbing system is repaired but would not be paid if
2 the system is replaced, regardless of which method was most appropriate or cost-effective.
3 State Farm's construction would discourage replacement even if the resulting cost to both the
4 homeowner and State Farm was less than it would be if the plumbing system were repaired.
5 This policy construction could result in wasteful spending contrary to public policy.

6 Finally, the court concludes State Farm's construction does not facilitate the purpose of
7 the insurance policy as a whole. This provision, like most insurance provisions, is designed to
8 make the homeowner whole after an unforseen loss. There is no reason why a homeowner with
9 a system that can only be repaired by replacement would have any less desire or need for
10 recompense after suffering a covered loss. State Farm's construction, however, makes a
11 homeowner whole (at least as far as tear-out costs) if her piping system can be repaired but not
12 if the appropriate, cost-effective solution is replacement. This construction does not support the
13 purpose of the policy as a whole.

14 After "examining the purpose of the clause in question, the public policy considerations
15 involved and the transaction as a whole," the court concludes that State Farm's construction of
16 the tear-out provision does not "effectuate the parties' intent" or "protect the reasonable
17 expectations of the insured." *See California Cas. Ins. Co.,* 208 Ariz. at 418, 94 P.3d at 618;
18 *Liberty Ins. Underwriters, Inc.*, 215 Ariz. at 83, 158 P.3d at 212. The tear-out provision applies
19 even if repair of the system that caused the covered loss requires complete replacement.

20 State Farm maintains the "pertinent dictionary definition of 'repair' is 'to restore by
21 *replacing a part* or putting together what is torn or broken'" (Doc. 179, p. 13) (emphasis in
22 original) (citing *Merriam Webster's Collegiate Dictionary*, 1055 (11th ed. 2004). Accordingly,
23 State Farm argues that replacing *all* parts cannot be considered a "repair" and would not fall
24 within the explicit terms of the tear-out clause. State Farm concedes, however, that the same
25 dictionary gives an alternate definition for repair – "to restore to a sound or health state." *Id.*
26 The court finds this alternate definition to be applicable in the facts in the instant case.
27 Accordingly, this court's interpretation of the tear-out provision is not contrary to the dictionary
28 meaning of the term, "repair."

- 8 -

1   State Farm cites a number of cases for the proposition that the words repair and replace 2 are not synonymous. The court finds these cases to be of limited value, however, because none 3 of them analyze facts similar to those presented in the instant case. *See, e.g.*, *Schiernbeck v.* 4 *Davis*, 143 F.3d 434, 440 (8th Cir. 1998) ("[I]t is impracticable, as well as unwise to attempt to 5 lay down any rule on what constitutes a repair, but each case must be decided in the light of all 6 the facts and circumstances presented.") (internal quotation marks and citation omitted).

7   State Farm further argues the word "repair" is separate and distinct from the word 8 "replace" and should be treated as such because the phrase "repair or replace" is used elsewhere 9 many times in the policy. State Farm seems to suggest that if the tear-out provision were meant 10 to apply where the leaking system is replaced then the tear-out provision would have included 11 the phrase "repair or replace" instead of the word "repair." The court does not agree.

12   If the hypothetical change were made, the tear-out provision would read as follows: "If 13 loss to covered property is caused by water or steam not otherwise excluded, we will cover the 14 cost of tearing out and replacing any part of the building necessary to *repair or replace* the 15 system or appliance." Written this way, State Farm would be obligated to pay the tear-out costs 16 necessary to repair the system *or* necessary to replace the system after a covered loss. State 17 Farm would have to pay tear-out costs when a system is replaced even if replacement were not 18 necessary to "restore the system to a sound or health state." Replacing the word "repair" with 19 the phrase "repair or replace" could lead to waste contrary to the expectations of the parties and 20 contrary to public policy. Accordingly, the fact that the tear-out provision contains the word 21 "repair" and not the phrase "repair or replace" does not convince the court that the tear-out 22 provision should not apply if repair requires total replacement.

23   At best, State Farm has established that the wording of the tear-out provision is 24 ambiguous. Assuming arguendo that it is, the clause should be construed against the insurer, 25 State Farm. *See California Cas. Ins. Co. v. American Family Mut. Ins.*, 208 Ariz. 416, 418, 94 26 P.3d 616, 618 (App. 2004).

27   Guadiana moves that this court find as a matter of law that (1) the policy "covers tear-out 28 costs necessary to adequately repair the plumbing system, even if an adequate repair requires

- 9 -

replacing all or part of the system; and (2) there are no policy "exclusions that limit the coverage of the tear-out provision." (Doc. 176, p. 5) State Farm argues Guadiana's use of the term "adequately" impermissibly alters her burden of proof at trial. (Doc. 179, p. 7) Guadiana denies that this word has any substantive effect. (Doc. 182, p. 3, n. 1) Accordingly, the court recommends that the District Court avoid the issue and interpret the tear-out provision as follows:

> The tear-out provision in State Farm's policy requires State Farm to pay all tear-out costs necessary to repair the plumbing system (that caused the covered loss) even if repair of the system requires accessing more than the leaking portion of the system.

*See* (Doc. 176, p. 1) Guadiana's second numbered request is redundant. *Id*.

RECOMMENDATION:

The Magistrate Judge recommends the District Court, after its independent review of the record, enter an order

Granting in part the plaintiff's motion for partial summary judgment pursuant to Rule 56, FED.R.CIV.P. (Doc. 176)

If Guadiana can establish as a matter of fact that the system that caused the covered loss includes all the pipes in her house and it was necessary to replace all the pipes to repair that system, State Farm is obligated to pay the tear-out costs necessary to replace all the pipes, even those not leaking. *See* (Doc. 25, pp. 4-5, 29)

Pursuant to 28 U.S.C. §636(b), any party may serve and file written objections within fourteen days of being served with a copy of this Report and Recommendation. If objections are not timely filed, they may be deemed waived.

The Clerk is directed to send a copy of this Report and Recommendation to the parties or their counsel.

DATED this 25th day of January, 2012.

_____
Glenda E. Edmonds
United States Magistrate Judge

- 10 -

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

- 11 -