**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Rosemary Guadiana, | No. CIV 07-326 TUC FRZ (LAB) |
| Plaintiff, | **REPORT AND RECOMMENDATION** |
| vs. | |
| State Farm Fire and Casualty Company, | |
| Defendant. | |

Pending before the court is the defendant's motion to decertify the class pursuant to FED.R.CIV.P. 23, filed on October 15, 2013. (Doc. 248)

The plaintiff in this class action, Rosemary Guadiana, claims the defendant breached her homeowner's insurance policy by failing to pay the cost of tearing out and replacing part of the structure when she replaced her polybutylene (PB) plumbing. Guadiana intends to prove at trial that when a section of PB pipe springs a leak, the only way to fix the plumbing system is to replace all the PB pipe. Having done just that, Guadiana claims her insurer must pay the tear-out cost associated with accessing and replacing all that pipe.

The defendant, State Farm Fire and Casualty Company (State Farm), moves that this court decertify the Arizona class certified by this court on March 31, 2011. (Doc. 139); (Doc. 145) State Farm argues that factual and legal developments show Guadiana's claim no longer satisfies the requirements of Rule 23. Fed.R.Civ.P.

The case has been referred to Magistrate Judge Bowman for all pretrial matters pursuant to LRCiv 72.1.  Rules of Practice of the U.S. District Court for the District of Arizona.  The court finds the motion suitable for decision without oral argument.

The motion should be denied.  Recent legal and factual developments do not require the court to decertify the plaintiff's Rule 23(b)(3) class.

FACTUAL AND PROCEDURAL BACKGROUND

Guadiana had a homeowner's insurance policy with the defendant, State Farm.  (Doc. 247, ¶ 3)  On September 9, 2004, her home sustained water damage when the plumbing leaked.  *Id.* at ¶ 1  Shortly afterwards, Guadiana summoned her nephew who installed a repair coupling to plug the leaking pipe.  (Doc. 254, ¶ 13)

Guadiana discovered her plumbing system was constructed with polybutylene (PB) pipe. (Doc. 247, ¶ 1)  "[S]he was told by two different plumbing experts that the only way to repair a PB system is to replace the PB piping."  (Doc. 254, ¶ 14)  Accordingly, she replaced all the PB pipes in her home with a different piping material.  *Id.*

Guadiana's homeowner's insurance policy contains the following "tear-out" provision:

> We do not insure for any loss . . . which consists of, or is directly and immediately caused by . . .
>
> *            *            *
>
> f.  continuous or repeated seepage or leakage of water or steam from a:
>
> (1)  heating, air conditioning or automatic fire protective sprinkler system;
>
> (2)  household appliance; or
>
> (3)  plumbing system, including from, within or around any shower stall, shower bath, tub installation, or other plumbing fixture, including their walls, ceilings or floors;
>
> which occurs over a period of time.  *If loss to covered property is caused by water or steam not otherwise excluded, we will cover the cost of tearing out and replacing any part of the building necessary to repair the system or appliance.*  We do not cover loss to the system or appliance from which the water or steam escaped . . . .

1   (Doc. 247, ¶ 6)  (emphasis added).  Guadiana made a claim under this provision for the costs

2   incurred in tearing out and replacing that part of the structure necessary to replace her entire PB

3   piping system.  (Doc. 47)  State Farm took the position that it only had to pay tear-out costs

4   necessary to access the section of the pipe that leaked.

5        On July 11, 2007, Guadiana filed this action in U.S. District Court.  (Doc. 1)  She filed

6   an amended complaint on February 12, 2009.  (Doc. 47)  She claims State Farm's failure to pay

7   her entire tear-out costs is a breach of contract.  Originally she also claimed State Farm acted

8   in bad faith, but this claim has been dismissed.  (Doc. 96, p. 11);  (Doc. 109)

9        State Farm filed a motion to dismiss on September 14, 2007 for failure to state a claim

10  upon which relief can be granted pursuant to Rule 12(b)(6).  FED.R.CIV.P.   This court denied

11  the motion on September 2, 2008.  In construing the tear-out provision, the court concluded as

12  follows: "If Guadiana can establish as a matter of fact that the system that caused the covered

13  loss includes all the pipes in her house and it was necessary to replace all the pipes to repair that

14  system, State Farm is obligated to pay the tear-out costs necessary to replace all the pipes, even

15  those not leaking."  (Doc. 29)

16       On July 31, 2009, State Farm filed a motion for summary judgment pursuant to Rule 56,

17  FED.R.CIV.P.   (Doc. 63)   State Farm argued, among other things, that it was entitled to

18  summary judgment because Guadiana could not show it was necessary to replace her entire

19  piping system rather than simply fix the pipe that sprung a leak.  (Doc. 63, pp. 17-18)   For

20  instance, she provided no evidence concerning the condition of her own pipes.  (Doc. 96, p. 10)

21  Without this specific information, State Farm argued, she could not show they were defective

22  and needed to be replaced.  *Id.*

23       The court denied that aspect of the motion for summary judgment explaining that State

24  Farm's argument overlooked the gravamen of Guadiana's position.  *See* (Doc. 96); (Doc. 109,

25  pp. 2-3)  Guadiana's position was that PB pipes always had to be replaced.  (Doc. 96, p. 10)

26  They could never be repaired.  *Id.*  Accordingly, it did not matter what caused the leak or how

27  deteriorated her pipes were.  *Id.*

28

On March 31, 2011, the court granted Guadiana's second motion for class certification pursuant to Fed.R.Civ.P. 23(b)(3).  (Doc. 145)  Her class reads as follows:

> All current or former insureds of State Farm Fire and Casualty Co. who:
>
> (1) own or owned real property located in Arizona which was insured by Defendant;
>
> (2) experienced a leak in a PB System (defined as a plumbing system which included polybutylene pipe) within the insured property, which leak was acknowledged by Defendant to result in a covered loss;
>
> (3) incurred costs (or expended labor) for tearing out and/or replacing part of the insured property necessary to replace the polybutylene pipe and fittings within the system; and
>
> (4) during the Class Period were paid an amount(or were not paid at all) that failed to include the full cost of tearing out and replacing parts of the building necessary to replace the polybutylene pipe and fittings within the system.

(Doc. 145)  Guadiana's class is premised on her theory that once a PB piping system springs a leak it always must be replaced in its entirety.  Accordingly, everyone with a leaking PB piping system is in the same boat regardless of the condition of her pipes or the reason for the leak.

On December 7, 2011, Guadiana filed a motion for partial summary judgment.   (Doc. 176)  The court reiterated its prior finding: "If Guadiana can establish as a matter of fact that the system that caused the covered loss includes all the pipes in her house and it was necessary to replace all the pipes to repair that system, State Farm is obligated to pay the tear-out costs necessary to replace all the pipes, even those not leaking." (Doc. 183);  (Doc. 214)

State Farm filed a *Daubert* motion on July 15, 2013 to exclude the plaintiff's expert, Daniel Johnston.  (Doc. 238)

On October 14, 2013, State Farm filed a second motion for summary judgment pursuant to Rule 56, FED.R.CIV.P.   (Doc. 246)  Again, it argues summary judgment is appropriate because Guadiana cannot show that it was necessary to replace her entire PB piping system. (Doc. 246, p. 13)  The motion is currently pending before the District Court. *See* (Doc. 266)

1       Shortly afterwards on October 15, 2013, State Farm filed the pending motion to decertify

2    Guadiana's Arizona class. (Doc. 248) State Farm argues that factual and legal developments

3    show Guadiana's claim no longer satisfies the requirements of Rule 23. Fed.R.Civ.P.

4       Three days later on October 18, 2013, the Magistrate Judge denied State Farm's *Daubert*

5    motion to exclude the plaintiff's expert, Daniel Johnston. (Doc. 249) State Farm has appealed

6    this order to the District Court. (Doc. 250)

7

8    <u>Discussion</u>

9       "[A] district court retains the flexibility to address problems with a certified class as they

10   arise, including the ability to decertify." *United Steel, Paper & Forestry, Rubber, Mfg. Energy,*

11   *Allied Indus. & Service Workers Intern. Union, AFL-CIO, CLC v. ConocoPhillips Co.*, 593

12   F.3d 802, 809 (9th Cir. 2010). "Even after a certification order is entered, the judge remains free

13   to modify it in the light of subsequent developments in the litigation." *Id.*; *see also*

14   Fed.R.Civ.P. 23(c)(1)(C). "Reconsideration of an original class ruling typically occurs as a

15   result of a change in circumstances . . . and in the absence of materially changed or clarified

16   circumstances courts should not condone a series of rearguments on the class issues by either

17   the proponent or the opponent of the class." *Hartman v. United Bank Card, Inc.*, 291 F.R.D.

18   591, 597 (W.D.Wash. 2013) (punctuation modified).

19      Shortly after this court certified Guadiana's class pursuant to Fed.R.Civ.P. 23(b)(3), the

20   Supreme Court issued its decision in *Wal-Mart Stores, Inc. v. Dukes*, 131 S.Ct. 2541, 2551

21   (2011), in which the Court clarified the type of inquiry a district court should employ when

22   deciding to certify a class. In *Comcast Corp. v. Behrend*, 133 S.Ct. 1426, 1432 (2013), the

23   Court applied the *Dukes* standard to a class action certified under Rule 23(b)(3).

24      These cases instruct that "a party seeking to maintain a class action must affirmatively

25   demonstrate [her] compliance with Rule 23." *Comcast Corp. v. Behrend*, 133 S.Ct. 1426, 1432

26   (2013) (punctuation modified). "The Rule does not set forth a mere pleading standard." *Id*.

27   Rather, the party must be prepared to prove her proposed class fulfills the four Rule 23(a)

28   prerequisites (numerosity, commonality, typicality, and adequacy of representation) and that she

1   can "satisfy through evidentiary proof at least one of the provisions of Rule 23(b)." *Id*. Rule

2   23(b)(3), under which this court certified Guadiana's class, is appropriate if "the questions of

3   law or fact common to class members predominate over any questions affecting only individual

4   members." *Id*.

5       The Supreme Court has cautioned that it "may be necessary for the court to probe behind

6   the pleadings before coming to rest on the certification question, and that certification is proper

7   only if the trial court is satisfied, after a rigorous analysis, that the prerequisites of Rule 23(a)

8   have been satisfied." *Id*. (punctuation modified). "Such an analysis will frequently entail

9   overlap with the merits of the plaintiff's underlying claim." *Id*. "That is so because the class

10  determination generally involves considerations that are enmeshed in the factual and legal issues

11  comprising the plaintiff's cause of action." *Id*.

12      In the pending motion, State Farm argues that Guadiana's claim no longer satisfies the

13  requirements of Rule 23 given the new *Dukes* standard and in light of recent evidentiary

14  developments. Fed.R.Civ.P. First, State Farm argues Guadiana's class does not satisfy the

15  commonality prerequisite. *See* Fed.R.Civ.P. 23(a)(2) (A class action may be certified "only

16  if there are questions of law or fact common to the class.").

17      On the issue of commonality, the Supreme Court explained that the class proponent must

18  not only propose questions common to the class members, but must propose questions

19  susceptible to being resolved by common answers. *Wal-Mart Stores, Inc. v. Dukes*, 131 S.Ct.

20  2541, 2551 (2011). The proposed common question "must be of such a nature that it is capable

21  of classwide resolution—which means that determination of its truth or falsity will resolve an

22  issue that is central to the validity of each one of the claims in one stroke." *Id*.

23      Guadiana's common question may be stated as follows: If a PB plumbing system leaks,

24  must it always be replaced in its entirety? (Doc. 248, p. 10) State Farm argues this question

25  "does not generate common answers and does not satisfy *Dukes*" in light of the testimony of

26  Guadiana's new expert witness, Daniel Johnson. (Doc. 248, p. 10)

27      Johnson believes PB piping systems "can fail for a number of different reasons, including

28  a fitting failure, a failure in the pipe itself, breaking of crimp rings, valves coming off, faulty

installation, too sharp a bend in the pipe and so forth." (Doc. 248, p. 11)  Accordingly, State Farm argues his opinion is not consistent with Guadiana's theory that PB pipes must be replaced because they deteriorate over time.  Moreover, State Farm notes that Johnson has not examined the pipes in Guadiana's home.  He therefore has no opinion as to whether or not *her* pipes needed to be replaced in their entirety due to their condition.

The court finds Guadiana's class still fulfills the commonality prerequisite.  At trial, the trier of fact will be asked to resolve the following question:  If a PB plumbing system leaks, must it always be replaced in its entirety?  This is a question that is common to all members of the class and one that can be answered once and for all for all class members.

Guadiana's class is premised on her theory that once a PB piping system springs a leak it always must be replaced in its entirety.  Accordingly, everyone with a leaking PB piping system is in the same boat regardless of the condition of her pipes or the reason for the leak. She intends to prove this point by relying, in part, on the testimony of her expert witness, Daniel Johnston.  *See* (Doc. 249)  (denying State Farm's *Daubert* motion to exclude Johnson's testimony)

In his expert report, Johnston explains that he is the Director of Operations for Plumbing Express/SageWater, which is "a plumbing contractor specializing in the replacement of domestic water pipe." (Doc. 238-2, ¶ 11) Johnston has "successfully managed the repiping of over 68,000 single family, condominium, and apartment houses." (Doc. 238-2, ¶ 2)  He has presented "over a dozen informational seminars discussing the issues with polybutylene" and has "spoken about polybutylene with home inspectors from all over the country for several years." *Id.*, ¶¶ 3, 4

Johnston's position on the issue of repiping a leaking polybutylene plumbing system is stated as follows:

> I have seen all types of failures in different parts of the pipe system and in different parts of the country. I have seen acetal fittings fracture, crimp rings fail, pipe split down the middle, etc. When a polybutylene pipe system fails, it is very difficult to tell the exact cause or causes of the failure. Accordingly, the standard in the plumbing industry for many years has been plain and simple – when there is a leak in a polybutylene system, the proper way to repair the system is to repipe the house with a non-polybutylene type of plumbing.

(Doc. 238-2, ¶ 17)

Johnson's testimony resolves Guadiana's common question with an answer common to all members of the class.  Once a PB piping system begins to leak it always must be replaced in its entirety.  It does not matter why the pipe began to leak.  A PB piping system has so many avenues for failure that repiping is the only way to ensure system reliability.

Contrary to State Farm's argument, Johnson's long list of PB piping failures does not detract from the commonality among class members.  On the contrary, his long list of possible avenues for failure gathers together all members of Guadiana's class and explains why the issue may be determined in a single stroke once and for all.  It does not matter why the pipe began to leak.  If it is a PB system, all the pipes must be replaced.

State Farm further argues that Johnson's testimony contradicts Guadiana's allegation in her complaint that PB pipes must be replaced because chemicals in the water make them brittle. State Farm seems to be of the belief that Guadiana must prove this statement true in order to prevail at trial.  Not so.  As class representative, Guadiana must prove that a PB plumbing system always must be replaced in its entirety once it begins to leak.  She does not need to explain *why* this is so in order to prove breach of contract.  *See also 20 Federal Practice & Procedure Deskbook* § 72  (explaining that modern notice pleading was designed to remedy the shortcomings of code pleading under which the pleader "was committed to factual statements from which the pleader could not deviate at the trial."); *Affiliated FM Ins. Co. v. LTK Consulting Services, Inc.*,  2012 WL 1533887, 5 (W.D.Wash. 2012)  ("Indeed, under notice pleading, a fact alleged in a complaint may be a poor measure of what is to follow.") (punctuation modified);  *see, e.g., Cathedral Estates v. Taft Realty Corp.*,  228 F.2d 85, 87 (2nd Cir. 1955)  (Where the complaint alleged that the hotel was worth more than the defendants sold it for, but at trial the plaintiffs were only able to prove that the buyer's consideration was worth less than the defendants alleged it to be, there was no "fatal variance between the pleading and the proof" because "[t]he complaint . . . put the defendants on notice that the adequacy of the consideration and the fairness of the transaction in all its aspects might be drawn in question.").

In the alternative, State Farm argues Guadiana's class is not administratively feasible or ascertainable. State Farm, however, does not explain what legal or factual developments justify reopening this issue. The court previously determined after "rigorous analysis" that Guadiana's class is ascertainable. *See* (Doc. 139, p. 4) It does not appear that there have been any recent factual developments in the case that cast doubt on the court's original ruling. Accordingly, there is no reason to revisit this issue. *See Hartman v. United Bank Card, Inc.*, 291 F.R.D. 591, 597 (W.D.Wash. 2013) (The movant "must show some justification for filing a second motion, and not simply a desire to have a second or third run at the same issues.").

State Farm further argues that Guadiana's class does not fulfil the criteria of Rule 23(b)(3). Specifically, State Farm argues that individual issues predominate over alleged common issues.

First, State Farm argues that whether a piping system needs replacement is a question that requires individual factual determination, and these individual issues predominate over any allegedly common issues. This argument is derived directly from its prior argument on the issue of commonality. (Doc. 248, p. 17) Based on Johnson's large list of possible PB piping failures, State Farm argues that the precise mode of failure must be established for each system. As the court explained above, however, State Farm is mistaken. This large list of possible PB system failures only *strengthens* the commonality among the members of the class and *increases* the predominance of common issues. It does not matter what avenue of failure caused the leak, all PB systems must be replaced in their entirety.

Second, State Farm argues that damages will vary among class members, and therefore common issues do not predominate over individual issues. State Farm urges the court to revisit this issue based on a recent Supreme Court case, *Comcast Corp. v. Behrend*, 133 S.Ct. 1426 (2013). It is instructive to examine that case in some detail.

In *Comcast*, the plaintiffs claimed that the cable television provider, Comcast, had improperly concentrated its operations in the Philadelphia region. *Comcast Corp.*, 133 S.Ct. at 1430. This "clustering" of operations in a single area, according to the plaintiffs, reduced competition and increased prices. The plaintiffs proposed four theories of antitrust impact, but

1    the district court accepted only one theory for class certification pursuant to Rule 23(b)(3). *Id.*

2    at 1431. The one theory accepted by the district court was the "overbuilder theory," which

3    hypothesized that by creating a monopoly, Comcast deterred other providers from building

4    competing cable networks in the same area. *Id.*

5          The district court found damages could be calculated on a classwide basis based on the

6    testimony of a single witness, Dr. James McClave. *Id.* McClave calculated damages resulting

7    from Comcast's allegedly improper "clustering." *Id.* He did not, however, separate the

8    damages resulting from each individual antitrust theory. *Id.* On appeal, the Third Circuit

9    affirmed stating that "at the class certification stage [the plaintiffs] were not required to tie each

10   theory of antitrust impact to an exact calculation of damages." *Id.*

11         The Supreme Court reversed holding that the Third Circuit erred by refusing to examine

12   the plaintiffs' calculation of damages simply because this inquiry would involve a judgment as

13   to the underlying merits of the plaintiff's case. In fact, the plaintiffs provided no evidence at

14   all as to the amount of damages that would have resulted from the reduction of overbuilder

15   competition, the only antitrust theory upon which the class was based. *Id.* at 1433.

16   Accordingly, the plaintiffs failed to prove that damages were capable of measurement on a

17   classwide basis and Rule 23(b)(3) predominance was not shown.

18         *Comcast* stands for the proposition that "plaintiffs must be able to show that their

19   damages stemmed from the defendant's actions that created the legal liability." *Vaccarino v.*

20   *Midland Nat. Life Ins. Co.*, 2013 WL 3200500 (C.D.Cal. 2013). Furthermore, the trial court

21   should not be shy about scrutinizing the merits of the plaintiff's claim if those merits must be

22   examined to make a proper Rule 23(b)(3) analysis. These are important lessons, but they do not

23   justify revisiting this court's prior damages inquiry.

24         When this court originally analyzed Guadiana's proposed class, the court carefully

25   considered the nature of the damages each class member might have suffered based on

26   Guadiana's breach of contract theory. *See* (Doc. 101, p. 13); (Doc. 139, p. 11); (Doc. 145)

27   The damages suffered by the class members stem directly from State Farm's alleged breach.

28

1   The court did not refrain from considering any arguments because they might have encroached
2   on the merits of the underlying claim.  Accordingly, *Comcast* is inapposite to the instant action.

3       State Farm argues in the alternative that the testimony offered by Johnson casts doubt
4   on the court's prior analysis.  The court does not agree

5       Johnson testified that the amount of tear-out damages would vary from house to house
6   based on the layout of the house and the wall treatment.  He opined that the tear-out cost could
7   vary from 25% to 40% of the total cost.   That the tear-out cost could and would vary from
8   house to house is something the court considered when the class was originally certified.  (Doc.
9   101, p. 13);  (Doc. 139, p. 11);  (Doc. 145)  Johnson's testimony does not necessitate
10  reconsideration of this issue.  *See also Leyva v. Medline Industries Inc.*, 716 F.3d 510, 513 (9th
11  Cir. 2013)  ("In this circuit, however, damage calculations alone cannot defeat certification.").

12      Finally, State Farm argues Guadiana's class action is not managable pursuant to Rule
13  23(b)(3)(D).   Specifically, State Farm takes issue with Guadiana's proposed method of
14  calculating damages by adjudicating sample cases and extrapolating to the class as a whole.
15  (Doc. 248, p. 20)  (citing Doc. 117, pp. 30-31)  This method of calculating damages was
16  proposed by Guadiana as an alternative argument in her motion to certify the class.  The court's
17  order certifying the class, however, did not adopt this alternative argument.  Accordingly, there
18  is no need to reexamine the argument now.

19
20  RECOMMENDATION:

21      The Magistrate Judge recommends the District Court, after its independent review of the
22  record, enter an order

23      DENYING State Farm's motion to decertify the class pursuant to FED.R.CIV.P. 23, filed
24  on October 15, 2013.  (Doc. 248)

25      Pursuant to 28 U.S.C. §636 (b), any party may serve and file written objections within
26  14 days of being served with a copy of this report and recommendation.   If objections are not
27  timely filed, the party's right to de novo review may be waived.  The Local Rules permit the
28  filing of a response to an objection.  They do not permit the filing of a reply to a response.

1

2        DATED this 13th day of March, 2014.

3

4

5                                           Leslie A. Bowman
6                                   United States Magistrate Judge

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28